452 S.E.2d 714

**Hanley C. CLARK, Commissioner of Insurance for the State of West Virginia, as Receiver of George Washington Life Insurance Company, Plaintiff/Appellant,**

v.

**Arthur W. MILAM; John H. Wilbur; Dudley D. Allen; Frank E. Clark, Jr.; Michael J. Davoli; Mahoney, Adams & Criser, P.A., f/k/a Mahoney, Adams, Milam, Surface & Grimsley, P.A., also f/k/a Mahoney, Hadlow & Adams, P.A.; John J. McAvoy; Carolyn B. Lamm; Donald F. Withers and Byron N. Thompson, Jr., Defendants/Appellees.**

No. 22369.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1994.

Decided Dec. 8, 1994.

---

See also 155 F.R.D. 546.

Ellen G. Robinson, C. Philip Curley, Robinson Curley & Clayton, P.C., Chicago, IL and Rudolph L. DiTrapano, Joshua I. Barrett, Debra L. Hamilton, DiTrapano & Jackson, Charleston, for plaintiff/appellant.

John H. Wilbur, Dudley D. Allen, George Washington Corp. Jacksonville, FL, for Wilbur.

John E. Jenkins, Jr., Suzanne Oxley, Anne M. McGee, Jenkins, Fenstermaker, Kreiger, Kayes & Farrell, Huntington, for Arthur W. Milam.

Robert B. King, Stephanie D. Thacker, King, Allen & Arnold, Charleston, for Carolyn Lamm.

Joseph R. Goodwin, Richard D. Owens, Goodwin & Goodwin, Charleston, Stephen M.

Sacks, Michael S. Solender, Arnold & Porter, Washington, DC for Withers & Thompson.

NEELY, Justice.

An action was brought in the United States District Court for the Southern District of West Virginia by the statutory receiver of the George Washington Life Insurance Company ("GW Life"), an insolvent West Virginia insurance company, against certain of the company's former officers, directors, accountants and lawyers. The receiver alleges that: (1) the officers and directors looted over $15 million from GW Life; (2) auditors hired by the officers and directors assisted in the misconduct; and, (3) outside counsel also hired by the officers and directors helped the officers and directors control GW Life through acts of professional negligence. The receiver seeks the amount of money allegedly looted from the company in damages.

This case is before this Court on two certified questions from the Honorable Charles H. Haden II, Chief Judge of the United States District Court for the Southern District of West Virginia. Both questions concern the "adverse domination" doctrine that has been applied in other jurisdictions to toll statutes of limitations in actions brought by receivers of insolvent insurance companies and financial institutions. Judge Haden held that the doctrine of adverse domination, if recognized by this Court, would toll the limitations period on the receiver's claims.

The certified questions are:

(1) Does West Virginia recognize the doctrine of adverse domination to toll statute of limitations for tort claims asserted by the receiver of an insurance company, acting pursuant to W.Va.Code, § 33–10–1, et seq., against the officers and directors who acted adversely to the interests of the company and against lawyers and accountants, owing fiduciary duties to the company, who took some action contributing to the adverse domination of the company?

(2) If the answer to the first question is "yes," will the doctrine of adverse domination toll statute of limitations in favor of the West Virginia Insurance Commissioner as Receiver when similar claims could have been raised by the shareholders of the insurance company's holding company in a previously settled shareholder derivative action, but where the shareholders of the parent company had little interest in redressing the wrongs to the subsidiary insurance company?

Plaintiff Hanley C. Clark, Commissioner of Insurance for the State of West Virginia, is the statutory receiver of GW Life. (Commissioner Clark, in his capacity as receiver, is hereafter referred to as "the Receiver.") GW Life is an insolvent West Virginia life and health insurer. As a West Virginia domiciled insurance company, GW Life was regulated by the West Virginia Insurance Commissioner's office and was subject to the West Virginia Insurance Code, *W.Va.Code* 33–1–1 [1957], *et seq*. GW Life was a wholly-owned subsidiary of George Washington Corporation ("GW Corp"), a publicly-traded Delaware corporation that is now defunct. GW Corp had no operations of any kind of its own. It obtained virtually all of its operating revenues directly or indirectly from GW Life.

Defendants John H. Wilbur, Arthur W. Milam, Michael J. Davoli, Frank E. Clark, and Dudley D. Allen (collectively "the O & D Defendants") served as directors of GW Corp and GW Life (as well as certain other subsidiaries of GW Corp) during all or part of the time relevant to plaintiff's claims. Mr. Wilbur, Mr. Clark and Mr. Davoli also served as officers of the companies and paid themselves salaries or directors' fees. Mr. Wilbur, Mr. Milam and Mr. Allen also hired themselves as lawyers for GW Life, and GW Life paid them substantial lawyers' fees. Furthermore, while these defendants served as GW Life's officers and directors, they owned a significant percentage of GW Corp stock. By the end of 1983, at the latest, they had obtained a controlling interest in the stock of GW Corp. From 1978 until 1981, Mr. Wilbur, Mr. Milam and Walter Walden, another defendant in the case, comprised a majority of the board of directors of GW Life. From 1981 until at least September 5, 1990 (the period during which most of the transactions on which the receiver's complaint is based occurred), the defendants, who were officers and directors, and Mr. Walden (in various combinations) were the

only directors of GW Life. At no time relevant to this case were there any "independent" directors of GW Life.

The O & D Defendants retained Coopers & Lybrand ("Coopers") to audit GW Corp and GW Life and to provide other accounting services throughout the time relevant to this case. Defendants Donald F. Withers and Byron N. Thompson, Jr. (collectively, "the Coopers Defendants") were the partners in charge of the engagement. The O & D Defendants also hired the law firm of White & Case to provide legal services to GW Corp and GW Life. Defendant Carolyn B. Lamm is a partner in that firm. She personally acted as counsel to GW Corp and GW Life and supervised others working on various matters for the companies. White & Case and Ms. Lamm also represented the O & D Defendants individually and at the same time they were representing GW Life.

In 1990, the Insurance Commissioner's office began an examination of GW Life for the two years ending December 31, 1989. During the examination, the officers and directors of GW Life allegedly refused to provide the examiners with certain financial information as required under the Insurance Code, including information about an affiliated company, the DWM Agency through which the O & D Defendants allegedly misappropriated funds from GW Life. In response to this and other allegedly illegal conduct by the officers and directors, the Commissioner sought an order from the Circuit Court of Kanawha County appointing him temporary Receiver of GW Life. On 5 September 1990, the circuit court in *State v. George Washington Life Insurance Co.*, No. 90 C 3254, entered an order appointing the Commissioner as Receiver *Pro Tem.* Pursuant to that order, the Receiver *Pro Tem* took possession of the records and books of GW Life and completed his examination of the company.

The examiners concluded that GW Life was insolvent and that its liabilities exceeded its assets by at least $12,742,159 as of 31 December 1989. Thereafter, the Commissioner sought an order from the circuit court for the liquidation of GW Life. Ultimately, an agreed order of liquidation was entered on 3 June 1991, and the Commissioner was appointed permanent Receiver and Liquidator of GW Life. The Commissioner asserts that one of the responsibilities of the Receiver under the Insurance Code is to marshall all assets into the GW Life estate to be distributed to policyholders and other creditors. Included among those assets are rights of action belonging to GW Life, such as those the Receiver asserts here. The Receiver has the authority and the duty to pursue such rights of action under the Insurance Code, *W.Va.Code* 33–10–14 [1990]. All actions of the Receiver, including the initiation and pursuit of this case, are reviewed and must be approved by the circuit court that supervises the ongoing liquidation proceeding. *W.Va. Code* 33–10–14(e) [1990].

This action is brought by the Commissioner solely in his capacity as Receiver to recover the monies allegedly misappropriated from GW Life by the O & D Defendants, and to recover damages allegedly resulting from the misconduct of the lawyer and accountant defendants in connection with the services they performed for GW Life. The recovery in this lawsuit will be included in the general assets of the estate and distributed to GW Life's policyholders and creditors. *W.Va. Code* 33–10–19a [1990].

The allegations in this suit are that the O & D Defendants, aided by their handpicked lawyers and accountants, illegally extracted millions of policyholder premium dollars from GW Life and used those dollars for their own private purposes. The Receiver alleges that the O & D Defendants' conduct violated RICO, 18 U.S.C. § 1961, *et seq.*, constituted a civil RICO conspiracy and civil fraud, and violated common law fiduciary duties.

■ Although the facts of this case are extraordinarily complex, the issue before this Court is a pure, abstract question of law, namely: Do we recognize the doctrine of "adverse domination" as a logical extension of our "discovery rule" that has long been applied in tort cases equitably to toll applicable statutes of limitation. Although the defendants in this case have supplied lengthy briefs, their arguments in this Court are essentially that we should avail ourselves of our prerogative to reformulate all certified

questions and then, having reformulated the questions, decide them in favor of the defendants on the facts. In a nutshell the defendants assert many facts from which they encourage us to infer that notwithstanding that the doctrine of adverse domination might exist in West Virginia law, it is inequitable to apply the doctrine to the defendants in this case. For obvious reasons, not the least of which is that we are not set up for fact finding in federal cases, we decline the defendants' invitation.

## I

■ Adverse domination is an equitable doctrine that tolls statutes of limitations for claims by corporations against its officers, directors, lawyers and accountants for so long as the corporation is controlled by those acting against its interests. *Int'l Rys. of Central America v. United Fruit Co.,* 373 F.2d 408, 412 (2d Cir.), *cert. denied,* 387 U.S. 921, 87 S.Ct. 2031, 2035, 18 L.Ed.2d 975 (1967). Indeed, the adverse domination doctrine appears to be well settled law in many states,[1] and it has been generally accepted by federal courts to be the law of states that have not yet explicitly ruled on the subject themselves. *See, e.g., Resolution Trust Corporation v. Farmer,* 865 F.Supp. 1143 (E.D.Pa.1994).

For over 70 years, this Court has recognized and applied the discovery rule that tolls statutes of limitations for tort claims. *See, e.g., Petrelli v. West Virginia–Pittsburgh Coal Co.,* 86 W.Va. 607, 104 S.E. 103 (1920). In West Virginia, the applicable statute of limitations is tolled on all tort claims "until the plaintiff knows or by reasonably diligence should know that he has been injured and

who is responsible." *Cart v. Marcum,* 188 W.Va. 241, 244, 423 S.E.2d 644, 647 (1992).

The discovery rule has been applied routinely to the types of claims brought by the Receiver. We have applied the rule to toll the statutes of limitations on claims of legal malpractice, *Family Saving and Loan, Inc. v. Ciccarello,* 157 W.Va. 983, 207 S.E.2d 157 (1974), *overruled on other grounds, Hall v. Nichols,* 184 W.Va. 466, 400 S.E.2d 901 (1990); professional negligence, *Harrison v. Seltzer,* 165 W.Va. 366, 268 S.E.2d 312 (1980); and general negligence, *Sattler v. Bailey,* 184 W.Va. 212, 400 S.E.2d 220 (1990).

■ We agree with the Receiver that a corporate plaintiff cannot "discover" injuries to the corporation caused by those who control the corporation. Thus, and in accordance with our overwhelming precedent, the discovery rule requires that the limitation periods on tort claims by a corporate plaintiff or its successor (here the Receiver) be tolled when the corporation has been prevented from "knowing" those claims existed. Generally, a corporation "knows," or "discovers," what its officers and directors know. But when officers and directors act against the interests of the corporation, their knowledge, like that of any agent acting adversely to his principal, is *not* imputed to the corporation. *Citizens' Nat'l Bank of Parkersburg v. Blizzard,* 80 W.Va. 511, 520, 93 S.E. 338, 341 (1917) (knowledge of misappropriation of funds by controlling directors and officer not imputed to bank); *First Nat'l Bank of New Martinsville v. Lowther–Kaufman Oil & Coal Co.,* 66 W.Va. 505, 66 S.E. 713 (1909) (bank director's knowledge of contract between himself and bank which favored director at bank's expense would not be imputed to bank and its other directors); *see also,*

---

1. *See, Greenleaf v. Profile Cotton Mills,* 235 Ala. 530, 180 So. 582 (1938); *San Leandro Canning Co. v. Perillo,* 211 Cal. 482, 295 P. 1026 (1931); *Robert P. Butts & Co. v. Butts Estate,* 119 Ill. App.2d 242, 255 N.E.2d 622 (1970); *Bates Street Shirt Co. v. Waite,* 130 Me. 352, 156 A. 293 (1931); *Hecht v. Resolution Trust Corp.,* 333 Md. 324, 635 A.2d 394 (1994); *Greenfield Sav. Bank v. Abercrombie,* 211 Mass. 252, 97 N.E. 897 (1912); *Ventress v. Wallace,* 111 Miss. 357, 71 So. 636 (1916); *Bilby v. Morton,* 119 Okla. 15, 247 P. 384 (1925); *Smith v. Lyle,* 59 S.D. 534, 241 N.W. 512 (1932); *Allen v. Wilkerson,* 396

S.W.2d 493 (Tex.Ct.App.1965); *United Park City Mines Co. v. Greater Park City Co.,* 870 P.2d 880 (Utah 1993); *see also, Kahn v. Seaboard Corp.,* 625 A.2d 269 (Del.Ch.1993) (tolling limitations period on claims in shareholder derivative suit against self-dealing directors where shareholder was unaware of claims against directors); *Dotlich v. Dotlich,* 475 N.E.2d 331 (Ind.Ct.App.1985) (limitations period tolled until director's misconduct discovered); *cf. Warthman v. Manufacturers Trust Co.,* 37 N.Y.S.2d 129 (N.Y.Sup.Div.1940) (allowing tolling where dominating directors personally profited from misconduct).

3 W. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 793, at 29 (1994).

Thus, as a matter of law, GW Life cannot be deemed to have known of its claims against the O & D Defendants arising out of the acts they allegedly committed adverse to GW Life's interests. Because the company lacked that knowledge, GW Life's claims are preserved under that subspecies of the discovery rule denominated "the doctrine of adverse domination." Accordingly, the answer to the United States District Court's first certified question is "yes."

## II

The defendants assert that even if the doctrine of adverse domination be recognized in West Virginia, it should be applied only when defendants have committed intentional torts. Yet, a corporation like GW Life is prevented from discovering its claims against those in control both by the sheer fact of their control, *FDIC v. Hudson*, 673 F.Supp. 1039, 1042 (D.Kan.1987) ("control of the institution implies control of information"), and by possible actions to conceal wrongdoing taken by the alleged wrongdoers. Thus, regardless of whether the alleged wrongdoing was intentional or merely negligent, the knowledge of officers' and directors' wrongdoing cannot be imputed to the corporation because those officers' and directors' control over the corporation prevents it from learning of the misconduct that is injuring it. As the Court of Appeals in Maryland said in *Hecht v. RTC, supra* note 1, 635 A.2d at 406:

> Indeed, the directors and officers may be so disengaged from their responsibilities that they themselves are unaware of the breach of their duty to the corporation. Under these conditions, there is hardly greater likelihood that the corporation will be able to discover the cause of action.

█ The second certified question relates to a particular shareholder derivative action filed in 1988 against GW Corp and the O & D Defendants, known as the "SAFE Litiga-

tion."[2] The SAFE Litigation was brought by shareholders of GW Corp (*not* shareholders of GW Life, whose only shareholder was GW Corp), ostensibly for the benefit of GW Corp. The Receiver asserts, and we accept as true for the purposes of answering these certified questions, that only a few of the wrongful transactions alleged in this case were alleged by the SAFE shareholders and that many more transactions uncovered by the Receiver and alleged in the first amended complaint were not alleged in the SAFE suit. The Receiver asserts, and we accept as true for the purposes of answering the second certified question, that GW Corp and its shareholders were among the principal beneficiaries of various allegedly improper transactions by GW Life that are the subject of the complaint in the district court.

Judge Haden recognized, and we accept as true, that shortly after the SAFE claims were asserted, the O & D Defendants caused motions to be filed challenging the SAFE plaintiffs' standing as representative plaintiffs. The O & D Defendants argued that the SAFE plaintiffs were not proper class representatives because of their earlier attempts to take over GW Corp. Judge Haden recognized that the federal court in Florida that approved settlement of the SAFE case stated that the plaintiffs had a history of activities that GW Corp considered to be against its interests. 872 F.Supp. 307, 315 n. 18 (S.D.W.Va.1994). In addition, it is asserted, and we accept as true for the purpose of answering the second certified question, that there was a "greenmail" settlement of the case in which the SAFE plaintiffs sold their stock to entities friendly to the O & D Defendants and were paid their attorneys' fees (in part by GW Life).

Nonetheless, appellees argue that the SAFE Litigation somehow triggered the statute of limitations on the Receiver's claims. We agree with Judge Haden, who rejected this argument, holding that there is, at the very least, a question of fact whether the shareholders who sued derivatively in the

**2.** The colloquial name "SAFE" is an acronym for the plaintiff in that matter, Security American Financial Enterprises, Inc., or "SAFE." SAFE was a shareholder of GW Corp that, with others, sued the corporation and certain of its officers and directors derivatively in Jacksonville in 1988.

**404**

SAFE Litigation did so to benefit GW Life or simply to benefit themselves. Accordingly, the second certified question is also answered in the affirmative.

### III

■ Finally, we hold that the adverse domination doctrine tolls the statute of limitations so long as there is no one who knows of and is able and willing to redress the misconduct of those who are committing the torts against the corporate plaintiff. *Farmers & Merchants Nat'l Bank v. Bryan*, 902 F.2d 1520, 1523 (10th Cir.1990) (if informed director is unwilling to sue, adverse domination continues); *Hecht v. RTC, supra* note 1, 635 A.2d at 408. If, however, shareholders learn of misconduct that harms their corporation, the discovery rule may no longer toll the limitations period. *Int'l Rys. of Central America v. United Fruit Co., supra*, 373 F.2d at 414. But, we agree with Judge Haden that until there are knowledgeable shareholders willing to redress the wrongs of their corporation, the corporation cannot discover its claims. *Clark v. Milam*, 847 F.Supp. 409, 422 (S.D.W.Va.1994), *citing Hunt v. American Bank & Trust Co.*, 606 F.Supp. 1348, 1354–56 (N.D.Ala.1985), *aff'd*, 783 F.2d 1011 (11th Cir.1986).

The peculiar facts of the case now before us make this case a particularly apt candidate for the application of the adverse domination doctrine. When the Commissioner is appointed Receiver for an insolvent insurance company, he is charged with marshalling the assets of the company for the benefit of its policyholders and creditors. *W.Va. Code* 33–10–11 [1957]; 33–10–14 [1990]. Those assets include claims against those who may have looted the insurance company as well as their possible accomplices who are either outside lawyers or accountants. *W.Va.Code* 33–10–14(b) [1990]. After all, much more is at stake in this litigation than simply a loss to shareholder investors: we have here an insurance company that was allegedly victimized and that was allegedly looted of monies that should have been available to pay the claims of totally innocent policyholders. On this issue, we can do no better ourselves than to cite with approval the ruling of the learned district court judge who said:

> Unlike the application of the discovery rule to a normal plaintiff, who clearly must be responsible for his own actions, when applied to the adversely dominated corporation, the rule must take into consideration shareholders are merely *acting* as the corporation pursuant to a legal fiction, and may have very limited interests or goals. . . . If the shareholders have no interest in redressing the wrongs, there will be no one to protect or advance the corporate causes of action. This consideration is especially significant where the Receiver is a governmental official charged with authority to protect *not only* the shareholders of the corporation, but also policyholders, creditors and the public.

872 F.Supp. at 314 (emphasis in original).

Both certified questions having been answered in the affirmative, this case shall now be dismissed from the docket of the Court.

Certified questions answered.

BROTHERTON, C.J., did not participate.

MILLER, J. Retired, sitting by temporary assignment.