**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HANLEY C. CLARK, Commissioner of
Insurance for the State of West
Virginia, as Receiver of George
Washington Life Insurance
Company,
Plaintiff-Appellee,

v.

DUDLEY D. ALLEN; JOHN H. WILBUR;
FRANK E. CLARK, JR.,
Defendants-Appellants,

and

WALTER C. WALDEN; MICHAEL J.
DAVOLI; MAHONEY, ADAMS AND
CRISER, formerly known as

Mahoney, Adams, Milam, Surface
and Grimsley, formerly known as
Mahoney, Hadlow and Adams; JOHN
J. MCAVOY; CAROLYN B. LAMM;
DONALD F. WITHERS; BYRON N.
THOMPSON, JR.,
Defendants,

v.

BETTY CORDIAL; TOM FENNELL;
ERNST & YOUNG; LYNN PENDLEBURY;
LAMAR WALKER; WALKER &
ASSOCIATES; JOHN COLLINS; CHERYL
DAVIS; CTFAND ASSOCIATES,
INCORPORATED,
Third Party Defendants.

No. 95-2487

HANLEY C. CLARK, Commissioner of
Insurance for the State of West
Virginia, as Receiver of George
Washington Life Insurance
Company,
Plaintiff-Appellee,

v.

DUDLEY D. ALLEN; JOHN H. WILBUR;
FRANK E. CLARK, JR.,
Defendants-Appellants,

and

WALTER C. WALDEN; MICHAEL J.
DAVOLI; MAHONEY, ADAMS AND
CRISER, formerly known as

Mahoney, Adams, Milam, Surface
and Grimsley, formerly known as
Mahoney, Hadlow and Adams; JOHN
J. MCAVOY; CAROLYN B. LAMM;
DONALD F. WITHERS; BYRON N.
THOMPSON, JR.,
Defendants,

v.

BETTY CORDIAL; TOM FENNELL;
ERNST & YOUNG; LYNN PENDLEBURY;
LAMAR WALKER; WALKER &
ASSOCIATES; JOHN COLLINS; CHERYL
DAVIS; CTFAND ASSOCIATES,
INCORPORATED,
Third Party Defendants.

No. 96-1116

2

HANLEY C. CLARK, Commissioner of
Insurance for the State of West
Virginia, as Receiver of George
Washington Life Insurance
Company,
Plaintiff-Appellee,

v.

JOHN H. WILBUR; FRANK E. CLARK,
JR.,
Defendants-Appellants,

and

DUDLEY D. ALLEN; WALTER C.
WALDEN; MICHAEL J. DAVOLI;
MAHONEY, ADAMS AND CRISER,
formerly known as Mahoney,

Adams, Milam, Surface and
Grimsley, formerly known as
Mahoney, Hadlow and Adams; JOHN
J. MCAVOY; CAROLYN B. LAMM;
DONALD F. WITHERS; BYRON N.
THOMPSON, JR.,
Defendants,

v.

BETTY CORDIAL; TOM FENNELL;
ERNST & YOUNG; LYNN PENDLEBURY;
LAMAR WALKER; WALKER &
ASSOCIATES; JOHN COLLINS; CHERYL
DAVIS; CTFAND ASSOCIATES,
INCORPORATED,
Third Party Defendants.

No. 96-1276

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-92-935)

Argued: January 28, 1998

Decided: March 13, 1998

Before WILKINSON, Chief Judge, and ERVIN and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John H. Wilbur, Dudley D. Allen, Jacksonville, Florida; Frank E. Clark, Jr., Jacksonville, Florida, for Appellants. Alan Francis Curley, ROBINSON, CURLEY & CLAYTON, P.C., Chicago, Illinois, for Appellees. **ON BRIEF:** Cynthia H. Hyndman, ROBINSON, CURLEY & CLAYTON, P.C., Chicago, Illinois; Rudolph L. DiTrapano, Debra L. Hamilton, DITRAPANO & JACKSON, Charleston, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This consolidated appeal involves a suit brought by the West Virginia Insurance Commissioner in his capacity as receiver for the George Washington Life Insurance Company ("GW Life"). A jury found Dudley D. Allen, John H. Wilbur, and Frank E. Clark, Jr., former directors of GW Life, liable for breaching their fiduciary duties to the company. It also found Allen and Wilbur liable for professional negligence. Allen, Wilbur, and Clark now challenge various rulings

and post-trial orders of the district court. Finding each of their contentions without merit, we affirm.

I.

GW Life is an insurance company established under West Virginia's corporate laws. Wilbur served as chairman, president, and chief executive officer of GW Life and its parent company, the George Washington Corporation ("GW Corp"). Clark served as the chief financial officer, treasurer, secretary, and a director of both companies. Allen also was a director of both companies.

In June 1991, after state examiners concluded that GW Life was insolvent in an amount exceeding $12 million, the Circuit Court of Kanawha County, West Virginia ordered liquidation of GW Life and, pursuant to W. Va. Code § 33-10-14, appointed the Commissioner permanent receiver and liquidator. The Commissioner, in his capacity as receiver, then brought this case, later removed to federal court, to recover assets that Wilbur, Clark, Allen (collectively referred to as "appellants") and others allegedly had diverted from GW Life.

The first amended complaint alleged in part that the diversion of assets had occurred through a series of transactions during the 1980s. The substance of these transactions is not seriously disputed in this appeal. In essence, they were designed to circumvent West Virginia's strict limitations on the use of policyholder premiums, e.g., W. Va. Code § 33-27-5(c), and to enable certain shareholders, including appellants, to maintain control over GW Corp. The transactions included the following conduct: causing GW Life to pay funds either through consulting fees or sham commissions to dummy corporations controlled by appellants or others; using GW Life funds to pay the legal defense fees of GW Corp officers and directors and to settle lawsuits brought by dissident GW Corp shareholders; and directing GW Life to purchase GW Corp stock and then sell that same stock at substantial discounts to entities controlled by appellants or their associates.

During part of this time, Wilbur and Allen were law partners in Florida with Arthur W. Milam, a director of GW Corp and GW Life. Both Milam and Wilbur performed legal work on some of the transac-

5

tions. After Milam left the partnership in 1982, Wilbur and Allen remained partners, and Allen performed legal work for GW Life though not on transactions described in the Commissioner's complaint.

The complaint contained claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, and various state law claims. The state law claims included breach of fiduciary duty by appellants and others as well as professional negligence by Wilbur, Allen, and Milam.

Before trial, some defendants, though not appellants, settled with the Commissioner; the district court approved the settlements which totaled $7,416,666.66. Also before trial, Michael J. Davoli, one of the defendants who did not settle, became gravely ill and underwent surgery. Appellants moved to continue the trial on account of Davoli's absence. The district court denied the motion and severed the claims and defenses relating to Davoli from the trial.

Trial commenced at the end of March 1995 on the claims against appellants. During the trial, Professor Howard Messing, a professor of law and expert in legal ethics, testified about some of the transactions at issue. Professor Messing explained how Allen's and Wilbur's involvement in or approval of the transactions violated the standard of care for Florida attorneys.

Also during the trial, appellants sought to read extensive portions of Davoli's deposition to the jury. Some jurors complained that they found the presentation confusing, and the district court discontinued further reading of the deposition after it had consumed nearly a day of trial; the court provided appellants a brief opportunity to identify any material in the deposition that might be critical to their defense. The judge also instructed appellants that he would consider additional reading if subsequent testimony referred to matters in the deposition; appellants did not take advantage of this offer.

At the close of the evidence, the district court entertained motions for judgment as a matter of law. The court granted the Commissioner's motion for judgment as a matter of law on several affirmative defenses raised by appellants and declined to instruct the jury on

6

them. The district court denied a motion by Wilbur and Allen for judgment as a matter of law on the Commissioner's professional negligence claim. Four claims were submitted to the jury: RICO, RICO conspiracy, breach of fiduciary duty, and professional negligence. The jury found in appellants' favor on the RICO and RICO conspiracy claims, found appellants liable for breach of fiduciary duty, and found Wilbur and Allen liable for negligence in the performance of their professional services as attorneys for GW Life. It awarded damages of $8,986,070 on the professional negligence claim and $4,629,188 on the breach of fiduciary duty claim.

Subsequently, the court considered post-trial motions, including a motion to reduce the jury's damage awards by the amount of the pre-trial settlements. The court applied thirty-four percent of the settlements to the award on the breach of fiduciary duty claim and the remaining sixty-six percent to the award on the professional negligence claim. After the reductions, the court entered final judgment: appellants were jointly and severally liable for $2,107,521.34 for breach of fiduciary duty; Wilbur and Allen were jointly and severally liable for an additional $4,091,070.00 for professional negligence.

After the entry of final judgment, the Commissioner discovered that appellants held certain property located outside West Virginia. With the district court's permission, the Commissioner registered this judgment in the United States District Court for the Middle District of Florida. He then sought additional orders from the West Virginia district court. On November 20, 1995, the court ordered appellants to notify the Commissioner before transferring any assets. Subsequently, the court ordered appellants to liquidate certain assets and deliver the proceeds to the Commissioner; it also ordered Wilbur to deliver the deed to a home located in Florida.

After entry of the orders, appellants each filed for Chapter 7 bankruptcy protection in Jacksonville, Florida. This circuit stayed any appeal pending action by the bankruptcy court. After appellants were denied discharge, we lifted the stay. This appeal followed.

II.

Appellants challenge two of the district court's rulings relating to Davoli's absence. First, they argue that once Davoli became ill the

7

district court should have granted their motion to continue the trial. Second, they argue that the district court should not have limited the reading of Davoli's deposition at trial. We reject both challenges.

We review the district court's decision not to continue the trial for abuse of discretion. Kosnoski v. Bruce, 669 F.2d 944, 947 (4th Cir. 1982). A court may deny the motion for a continuance where the movant cannot show that an absent witness is likely to become available. See Thompson v. State of Miss., 914 F.2d 736, 739 (5th Cir. 1990) (no abuse of discretion in denying continuance where "likelihood of . . . obtaining the sought witnesses was far from clear"). In this case, appellants did not show that Davoli's health would improve; thus, the court had little assurance that he would be available to testify in the near future. See Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1570-71 (5th Cir. 1989) (no abuse of discretion in denying continuance where codefendant suffered heart attack before trial and physician could not indicate when health would permit him to attend). Under these circumstances, the district court properly exercised its discretion in denying appellants' motion.

The district court also properly exercised its discretion when it limited the reading of Davoli's deposition. We generally defer to district court rulings about the mode and presentation of evidence. United States v. Tindle, 808 F.2d 319, 328 (4th Cir. 1986). Federal Rule of Evidence 611(a) instructs courts to consider several factors including whether the presentation is "effective for the ascertainment of the truth" and "avoid[s] needless consumption of time." Here both considerations supported the district court's action. Given the complaints of two jurors, the district court's decision reduced the risk that the jury might be confused or misled by unrestricted reading of the deposition. See Beard v. Mitchell, 604 F.2d 485, 503 (7th Cir. 1979). As this confusing reading already had consumed nearly a day of trial, the court's decision also avoided a needless consumption of time. See Oostendorp v. Khanna, 937 F.2d 1177, 1179-80 (7th Cir. 1991) (finding district court requirement that party use deposition summaries "not an abuse of its discretionary authority to regulate the conduct of civil trials"); cf. Walker v. Action Indus., Inc., 802 F.2d 703, 712 (4th Cir. 1986) (approving district court requirement that party present oral summaries of lengthy depositions as "a legitimate exercise of its inherent discretionary power to ensure the orderly and expeditious

8

administration of the trial"). Finally, we doubt that the limitations imposed by the district court prejudiced appellants; despite the district court's offer, they never identified other passages of the deposition to be read into the record.

III.

Wilbur and Allen argue that they were entitled to judgment as a matter of law on the Commissioner's claim of professional negligence. They assert that the Commissioner's proof on this claim depended solely on the testimony of Professor Messing. They maintain that Professor Messing relied exclusively on Florida's ethics rules to establish the standard of care and that a violation of these rules may not give rise to a cause of action. Viewing the evidence in the light most favorable to the Commissioner, the nonmovant, we find that he introduced sufficient evidence to submit the professional negligence claim to the jury. Benner v. Nationwide Mut. Ins. Co., 93 F.3d 1228, 1234 (4th Cir. 1996).

Wilbur and Allen simply have ignored portions of Professor Messing's testimony. Professor Messing not only discussed whether Wilbur's and Allen's conduct comported with Florida's ethics rules but also gave his expert opinion that their conduct breached the standard of care for attorneys. The record is replete with instances where Professor Messing offered his opinion on this issue. For example, counsel for the Commissioner asked Professor Messing about a transaction in which GW Corp diverted premiums out of GW Life through a dummy corporation:

> Q: You mentioned that it [Wilbur's and Allen's conduct] violated the Rules of Ethics. Is it your opinion that it also violated the standard of care for attorneys in Florida?
>
> A: Yes, it did.

J.A. 392. It was not improper for Professor Messing to use the Florida ethics rules as evidence of the standard of care, which is what he did in this case. In sum, ample evidence supported the Commissioner's claim that Wilbur's and Allen's conduct breached the applicable stan-

9

dard of care; thus, the district court did not err in submitting this claim to the jury.*

IV.

Appellants next maintain that the district court erroneously granted the Commissioner judgment as a matter of law on several of their affirmative defenses. They focus most of their attack on whether the applicable statute of limitations barred the Commissioner's state law claims. We first consider the statute of limitations defense and then turn to the other defenses. We view the evidence in the light most favorable to appellants, the nonmovants. Benner , 93 F.3d at 1234.

A.

With respect to the statute of limitations defense, the issue raised by this appeal is a narrow one. The parties agree that West Virginia's two-year statute of limitations, W. Va. Code § 55-2-12, applied to the Commissioner's state law claims and that the Commissioner filed the suit more than two years after the challenged transactions had occurred. They disagree only over whether the doctrine of adverse domination tolled the statute of limitations.

Under the doctrine of adverse domination, as recognized in West Virginia, the statute of limitations is tolled on a corporation's claims against its directors, officers, and others while the corporation is controlled by parties acting against its interests. Clark v. Milam, 452 S.E.2d 714, 719 (W. Va. 1994) (recognizing the doctrine of adverse domination in response to questions certified by the district court in this case). This doctrine tolls the statute "so long as there is no one who knows of and is able and willing to redress the misconduct of those who are committing the torts against the corporate plaintiff." Id.

_____

*We also reject any argument that Wilbur and Allen were not in an attorney-client relationship with GW Life. Wilbur and Allen were partners with Milam while he performed legal work on certain transactions described in the complaint. Furthermore, Wilbur, while Allen was his partner, apparently did legal work on some of these matters. Finally, Allen also apparently performed legal work for GW Life on matters other than those described in the complaint.

10

at 720. "[T]he defendants have the burden of showing that there was someone who had the knowledge, ability and motivation to bring suit during the period in which defendants controlled the corporation." Hecht v. Resolution Trust Corp., 635 A.2d 394, 408 (Md. 1994); see also Clark v. Milam, 452 S.E.2d at 720 (citing Hecht).

In this case, the Commissioner provided evidence that GW Life was controlled by parties acting against its interests. Appellants and other defendants dominated GW Life by holding a substantial percentage of the stock in its parent, GW Corp. They also controlled the boards of both GW Corp and GW Life.

Once the Commissioner provided evidence of adverse domination, appellants bore the burden of proving that some other party had the "knowledge, ability and motivation to bring suit" on GW Life's behalf, thereby stopping the tolling of the statute. Appellants maintain that they carried this burden in two ways. First, they contend that the Commissioner, prior to his appointment as receiver of GW Life, was aware of and could have remedied any misconduct; they point to a 1988 lawsuit brought by GW Life against the Commissioner in which the Commissioner sought to be appointed receiver. Second, they argue that two lawsuits filed by dissident shareholders of GW Corp against appellants and others ended the tolling of the statute.

Appellants have failed to carry their burden. While the 1988 lawsuit provided some evidence that the Commissioner had the "knowledge" and "motivation" to remedy the losses sustained by GW Life, appellants failed to show that the Commissioner had the "ability" to sue on GW Life's behalf. In this case, the Commissioner lacked that ability until his appointment as receiver. And appellants not only failed to meet their burden of showing how the shareholder suits stopped the tolling of the statute, but their own testimony and other evidence completely undermine their position. Wilbur testified that the shareholders in one suit were "seeking to get[the] money of GW Life." He further testified the shareholders in both suits were "raiders who wanted to take the assets of the company," presumably also in reference to GW Life. It is far from clear that the dissident shareholders sought to protect GW Life's interests; rather it appears that the shareholders were prepared to settle their claims by selling their shares to appellants or others who controlled GW Corp and GW Life.

11

In sum, the evidence merely showed that the minority shareholders sought to protect their own interests, not GW Life's. Thus, the district court did not err in granting the Commissioner judgment as a matter of law on this defense.

B.

Appellants next argue that the district court should not have granted judgment as a matter of law to the Commissioner on several other affirmative defenses. These included laches, estoppel, unclean hands, avoidable consequences, and intervening cause. To support these defenses, appellants point to various actions of the Commissioner prior to his appointment as receiver.

Several of these defenses may be treated together. Laches, estoppel, unclean hands, and avoidable consequences all require proof of some conduct by the plaintiff that limits or bars recovery. In a suit brought by a receiver, actions taken in his capacity as regulator technically represent third-party conduct and, therefore, provide no support for defenses requiring proof of a plaintiff's conduct. Cf. State of North Carolina v. Alexander & Alexander Servs., Inc. , 711 F. Supp. 257, 264 (E.D.N.C. 1989) (suit brought by Commissioner of Insurance in capacity as rehabilitator of insurance company, finding "irrelevant" defenses based on conduct as regulator); Corcoran v. National Union Fire Ins. Co. of Pittsburgh, 532 N.Y.S.2d 376, 378 (N.Y. App. Div. 1988) (suit brought by Superintendent of Insurance in capacity as liquidator of insurance company, dismissing affirmative defenses based on conduct as regulator); see also Cordial v. Ernst & Young, 483 S.E.2d 248, 257 (W. Va. 1996) (suit brought by receiver of insurance company, recognizing the "representative capacity" in which receiver serves). Appellants failed to provide any evidence relating to the conduct of the plaintiff, in this case the Commissioner in his capacity as receiver. Thus, the district court properly granted judgment as a matter of law on these defenses.

Appellants also did not produce sufficient evidence to support their defense of intervening cause. To support this defense, a defendant must show that the third-party conduct was the sole and independent cause of the alleged injury. Wehner v. Weinstein , 444 S.E.2d 27, 32-33 (W. Va. 1994); Perry v. Melton, 299 S.E.2d 8, 10 (W. Va. 1982).

12

Here, substantial evidence indicated that the losses sustained by GW Life were due to the actions of appellants and others. Appellants failed to show that the Commissioner's pre-receivership conduct was the sole and independent cause of those losses. Thus, the district court properly granted judgment as a matter of law on this defense.

V.

Clark challenges the district court's apportionment of the pretrial settlements between the damage awards. The district court allocated thirty-four percent of the settlements to the damage award on the breach of fiduciary duty claim and the remaining sixty-six percent to the damage award on the professional negligence claim. Clark urges that the district court instead should have applied the settlements first to eliminate the damage award for breach of fiduciary duty and applied the balance to the damage award for professional negligence. We find no clear error in the district court's allocation. Atlas Food Sys. and Servs., Inc. v. Crane Nat'l Vendors, Inc. , 99 F.3d 587, 596 (4th Cir. 1996) (reviewing setoff for clear error).

While we have not identified a West Virginia case involving the precise situation presented in this appeal, we doubt that the West Virginia courts would embrace the approach advanced by Clark. Under that approach, Clark would completely avoid liability because the combined settlements exceed the damage award on the breach of fiduciary duty claim. Such an approach would undermine West Virginia's "strong public policy favoring out-of-court resolution of disputes." Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc., 390 S.E.2d 796, 803 (W. Va. 1990). Once some defendants had settled, others would be encouraged to take their chances at trial in the hope that the settlements might exceed the final damage award. The formula adopted by the district court advanced West Virginia's "strong public policy" of encouraging settlements by not absolving Clark of all liability. Under these circumstances, its allocation was not clearly erroneous.

VI.

Appellants finally raise several challenges to the district court's notification and turnover orders.

13

A.

Appellants argue that the district court lacked jurisdiction in the post-judgment proceedings. They contend that the district court could not enter further orders once the Commissioner had registered the judgment elsewhere. See 28 U.S.C. § 1963 (providing for the registration of judgments).

We disagree. In Peacock v. Thomas, the Supreme Court reaffirmed the longstanding principle that federal courts ordinarily may exercise ancillary jurisdiction to enforce their judgments. 116 S. Ct. 862, 868 (1996). "Without jurisdiction to enforce a judgment entered by a federal court, `the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" Id. (quoting Riggs v. Johnson County, 73 U.S. (6 Wall.) 166, 187 (1868)). In this case, the district court simply exercised the jurisdiction that Peacock and Riggs recognized as necessary to ensure appellants' satisfaction of the judgment. And nothing in the text of section 1963 indicates the registration of a judgment in another district deprives the judgment-rendering court of jurisdiction to enforce that judgment through appropriate means. Thus, we conclude that the district court had jurisdiction in these proceedings.

B.

Appellants next argue that the use of turnover orders was inappropriate. They maintain that the district court could only utilize a writ of execution to satisfy the judgment.

Federal Rule of Civil Procedure 69(a) instructs courts on the procedure for enforcing a judgment. It provides that"[p]rocess to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a) (emphasis added). Rule 69(a) also instructs courts generally to apply state procedures on execution absent controlling federal law. Id. Federal courts should comply substantially with these procedures but need not follow them exactly. United States v. Harkins Builders, Inc., 45 F.3d 830, 833 (4th Cir. 1995).

14

In West Virginia, a money judgment may be enforced by a writ of fieri facias. W. Va. Code § 38-4-5. Once the writ is issued, a judgment-debtor may be summoned to identify property with which to satisfy the judgment. W. Va. Code § 38-5-1. The debtor may then be required to deliver property in his possession, including real estate located outside West Virginia, to an officer possessing the writ. W. Va. Code § 38-5-4.

In this case, the district court's use of the turnover orders was proper. The "unless" clause of Rule 69(a) expressly authorizes courts to enforce their judgments by means other than writs of execution. Under West Virginia law, appellants could be required to turn over property in their possession, including the deed to Wilbur's home in Florida. W. Va. Code § 38-5-4; see also Laborers' Pension Fund v. Dirty Work Unlimited, Inc., 919 F.2d 491, 494 (7th Cir. 1990) (approving use of turnover order to recover property where authorized under Illinois law). While it does not appear that the district court followed every aspect of West Virginia's execution procedures, we find that it substantially complied with those procedures.

C.

Finally, appellants argue that the district court should have applied Florida's exemption laws because some of the property described in the turnover orders was located in Florida. We disagree. Rule 69 expressly directs a court to apply the "practice and procedure of the state in which the district court is held." Fed. R. Civ. P. 69(a). Rule 69(a) does not instruct courts to apply the procedures of the state in which the property is located. In this case, the district court sat in West Virginia and, thus, properly looked to West Virginia's exemption laws.

VII.

For the foregoing reasons, we affirm the judgment of the district court in all respects.

AFFIRMED

15