Robert L. KOSNOSKI, Appellee,

v.

Tom S. BRUCE, Appellant.

No. 81–1154.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 9, 1981.

Decided Feb. 5, 1982.

Rehearing Denied March 9, 1982.

A. Camden Lewis, Columbia, S.C. (William F. Austin, Keith M. Babcock, Barnes & Austin, Columbia, S.C., on brief), for appellant.

O. G. Calhoun, Jr., Greenville, S.C. (Jesse C. Belcher, Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S.C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and RUSSELL and SPROUSE, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

From a judgment for the plaintiff, Robert L. Kosnoski, in his action brought pursu-

ant to the South Carolina Uniform Securities Act, S.C.Code §§ 35–1–10 *et seq.* against defendant Tom S. Bruce in the sale to plaintiff of limited partnership interests, Bruce appeals. His attack focuses upon the following incidents of trial: (1) The District Court's refusal to grant a continuance after permitting plaintiff to amend his complaint thirteen days before trial; (2) its determination that the limited partnership interests purchased by plaintiff in 1975 were "securities" within the meaning of the South Carolina Uniform Securities Act, *id.* § 35–1–20(12); (3) its finding that Robert C. Threlkeld and George Beggs, co-principals of Carolina Equities, Inc., were agents of defendant Bruce; and (4) its ultimate conclusion that defendant violated S.C.Code § 35–1–1490 by a) selling non-exempt securities without registration, and b) by selling securities by means of untrue statements of material matters. Adjudging defendant in violation of the South Carolina Blue Sky Law, the trial court directed rescission of the contract, ordered repayment of the purchase price, plus statutory interest, and awarded attorney's fees to plaintiff as the prevailing party. Discerning no error in the District Court's Findings of Fact and Conclusions of Law, we affirm.

## I

As is not infrequent under State or Federal securities law, this litigation arose from an ultimately unsuccessful money-making contrivance. In October 1975 plaintiff, a West Virginia resident, was approached by Threlkeld of Carolina Equities, Inc., about the possibility of investing in land located in Greenville, South Carolina. Plaintiff acknowledged interest in such an investment and a meeting was arranged with the owners—defendant, his son Dan Bruce, and one James E. Jones, Jr., all South Carolina residents. Negotiating for several months, plaintiff agreed to participate in two separate, but related investment schemes, one embracing the purchase by plaintiff of a 95% limited partnership interest in an office building called Diran Executive Plaza, and one involving the purchase of a 23.52% limited partnership share in an undeveloped nine-acre tract of land adjoining the building.

During the discussions which led to the consummation of these two deals, defendant and his original partners or agents tendered a series of inducements to plaintiff touching upon the financial strength of the general partners and companies in which they held interest, the risk involved in the contemplated investments, plans for the use of plaintiff's capital contributions, and other matters affecting the two properties. Fourteen of these were later found by the District Judge to be material and either false or misleading, because of a failure to bare facts indispensable to free the statements of anything misleading.

Under both the Land Partnership and the Building Partnership, defendant, Jones, and Dan Bruce became general partners with a combined general partnership interest of 5%. These three general partners also were limited partners in the Land Partnership with combined additional interests of 72.48%. Upon receipt of their respective entitlements, plaintiff contributed $480,000 to the Building Partnership and $105,000 to the Land Partnership[1] and the other parties conveyed their pre-existing interests in the building and land to the two newly-formed partnerships.

Obedient to both partnership agreements, defendant, Jones, and Dan Bruce were vested with control of the partnerships' business. The only right reserved by plaintiff, other than the right to receive a return on invested capital, was the right to block major actions (*e.g.,* sale of all or substantially all of the partnerships' assets). In all other respects, plaintiff was but a passive participant in the two partnerships.

Not long after the December 1975 closing, both partnerships began to suffer seri-

---

1. Plaintiff also became obligated to contribute an additional $80,000 to the Land Partnership. Under the parties' agreement, this sum was not payable until plaintiff had accrued cash flow distributions totaling $80,000. Since the Land Partnership never had any earnings, this obligation never matured and consequently never was paid.

ous financial difficulty. By April 1976, it was apparent that the partnerships were unable to service their mortgage indebtedness and the first mortgagees foreclosed. As a consequence, plaintiff lost his entire investment of $585,000.

On December 1, 1977, suit was instituted in the United States District Court for the District of South Carolina against defendant and his son, Dan Bruce, alleging violations of the Federal securities laws, see 15 U.S.C. §§ 77a–77aa, 78a–78kk (1976), as well as South Carolina's Blue Sky Law, see S.C.Code §§ 35–1–10—35–1–1590. Prior to trial, Dan Bruce was dismissed as a defendant and all claims under Federal law were dismissed by plaintiff.

After a three-day trial, the District Court, sitting without a jury, held that the limited partnership interests purchased by plaintiff were "securities" within the meaning of South Carolina's Uniform Securities Act, id. § 35–1–20(12), that the securities were sold without the registration exacted by the Act, that no exemption from registration was available, and that they were sold by means of untrue statements of material facts. Defendant assails each of these conclusions.

## II

The key issue raised by this appeal is whether the limited partnership interests purchased by plaintiff in 1975 were securities under South Carolina law. The State's provision, like its Federal analogue, is broad, encompassing almost every conceivable investment scheme.[2] On its face, however, the statute does not specifically include limited partnership interests. The

primary question, as framed by the parties, is whether these interests qualify as "investment contracts."

Since the statute's enactment, the South Carolina courts have not had the opportunity to construe either the term "security" or the phrase "investment contract." In *Bradley v. Hullander*, 272 S.C. 6, 249 S.E.2d 486 (1976), however, the South Carolina Supreme Court suggested that it ordinarily would follow Federal courts' interpretations of the Federal securities laws where sections of the South Carolina Uniform Securities Act were substantially identical to Federal provisions. We assume, therefore, that the South Carolina Supreme Court would adopt the Federal judicature concerning "investment contracts."

The classic test for the determination of what constitutes an "investment contract" was stated in *Securities & Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). There, the Supreme Court indicated that an investment contract would be found under Federal law where a "scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* at 301, 66 S.Ct. at 1104. The facts of this case square with this definition. The two deals provided for the contribution of at least $585,000 by plaintiff to an enterprise including three other parties. The record also demonstrates that plaintiff was a passive participant in these two ventures. All management responsibilities were delegated to the general partners. Plaintiff was not expected to, nor did he, take part in the running

2. The definition, in full, is as follows:

"Security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate of subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease or, in general, any

interest or instrument commonly known as a "security", or any certificate of interest or participation in temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. "Security" does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or for some other specified period.
S.C.Code § 35–1–20(12).

of the two partnerships. We think the District Court was correct in characterizing these investment vehicles as securities.[3]

## III

Having concluded that the limited partnerships here qualify as securities under South Carolina law, defendant's remaining objections to the District Court's judgment can be dealt with swiftly. First, we cannot agree that the trial court abused its discretion in declining to allow a continuance after permitting plaintiff to amend his complaint thirteen days before trial. Defendant had actual notice of these claims months before trial, had conducted discovery of them long before trial, and had more than enough time to prepare his defense. The District Court's exercise of discretion, therefore, was faultless.

Finally, we sense no merit in defendant's assertions that the District Court erred in a) finding Carolina Equities, Inc. to be the agent of defendant, Jones, and Dan Bruce, and b) in holding defendant responsible for fourteen material deceptions. In sum, our canvass of the record establishes that all factual findings questioned are supported by the evidence.

*Affirmed.*

---

3. Defendant asserts, however, that these ought not to be classified as securities because they involve investments in real estate. While it is true that ordinary real estate investments, *e.g.*, the purchase of a dwelling, usually are not securities under either Federal or State law, the facts of each case determine whether or not particular instruments are securities and, as a matter of law, investments in real estate can be securities. *See McGreghar Land Co. v. Meguiar*, 521 F.2d 822 (9th Cir. 1975). The facts of this case show that the *Howey* test is satisfied and that the identity of the underlying commodity is irrelevant.