**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TAMER SALAMEH; REAL ESTATE 4 HOSPITALITY, LLC, a California limited liability company; ALEKSEY KATS; DIANA KATS; MITCHELL J. PEREIRA; GARY A. TORRETTA; ROBERT ALVARENGA; ALEXIS COSIO; CESAR MOTA; DENIS B. ROTHE, JR.; CHARLENE SCHRUFER; DAVID R. BUSHY; DALE CURTIS; ZONDRA SCHMIDT; DOLORES GREEN; CHRISTY JESKE; TAZIA REYNA; MARY L. WEE SONG; KERRY L. STEIGERWALT; BETH STEIGERWALT; STUART M. WOLMAN; JEFFREY E. LUBIN; BARBARA L. LUBIN, individually and as co-trustees of the Lubin Family Trust dated 26 March 2002; MIKAEL HAVLUCIYAN; THERESE HAVLUCIYAN, individually and as co-trustees of the Havluciyan Family Trust; SADOUX KIM, individually and on behalf of a class of all others similarly situated, VIRGINIA GALLANOSA; JOSE GALLANOSA; JOEY CLEMENT; KEVIN HENRY; ANDREW PAUL; STEVEN PAUL; VITO MICALE; PHILIP GUTIRREZ; BARBARA BEHRLE; THOMAS | No. 11-55479 <br><br> D.C. No. 3:09-cv-02739-DMS-CAB <br><br><br> OPINION |

BEHRLE; DANON SLINKARD; KIM
HENRY; SYLVIA HOERR; MATTHEW
HOERR,
                    *Plaintiffs-Appellants*,

                    v.

TARSADIA HOTEL, a California
corporation; TUSHAR PATEL, an
individual; B. U. PATEL, an
individual; GREGORY CASSERLY, an
individual; 5TH ROCK LLC, a
Delaware limited liability company;
MPK ONE, LLC, a California limited
liability company; PLAYGROUND
DESTINATION PROPERTIES, a
corporation; GASLAMP HOLDINGS,
LLC, a California limited liability
company; PROFESSIONAL
MORTGAGE PARTNERS, INC.,
                    *Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
June 4, 2013—Pasadena, California

Filed August 13, 2013

Before: Ronald M. Gould and N. Randy Smith, Circuit
Judges, and Sharon L. Gleason, District Judge.[*]

Opinion by Judge Gould

---

**SUMMARY**[**]

---

**Securities**

Affirming the dismissal on the pleadings of a putative
class action under the Securities Act of 1933, the Securities
Exchange Act of 1934, and California state law, the panel
held that the plaintiffs failed to allege the sale of a security
based on their purchase of condominiums in the Hard Rock
Hotel in San Diego.

The panel held that the plaintiffs did not adequately allege
facts showing that they were offered real-estate and rental-
management contracts as a package. In addition, they did not
allege facts showing that they were induced to buy the
condominiums by the rental-management agreement.
Accordingly, these transactions did not constitute the sale of
a security, and the plaintiffs failed to state a claim for relief
under federal or state securities law. The panel also affirmed
the dismissal of common-law fraud claims.

---

[*] The Honorable Sharon L. Gleason, District Judge for the U.S. District
Court for the District of Alaska, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

## COUNSEL

Michael J. Aguirre (argued), Christopher S. Morris, and Maria C. Severson, Aguirre, Morris & Severson LLP, San Diego, California, for Plaintiffs-Appellants.

Frederick H. Kranz (argued) and Lynn T. Galuppo, Cox, Castle & Nicholson LLP, Irvine, California; Jonathan S. Kitchen and Ali P. Hamidi, Cox, Castle & Nicholson LLP, San Francisco, California, for Defendants-Appellees Tarsadia Hotels, Tushar Patel, B.U. Patel, Gregory Casserly, 5th Rock, LLC, MKP One, LLC, and Gaslamp Holdings, LLC.

Daniel M. Benjamin (argued) and Thomas W. McNamara, Ballard Spahr LLP, San Diego, California, for Defendant-Appellee Playground Destination Properties, Inc.

Mark D. Cahn, Jacob H. Stillman, Randall W. Quinn, William K. Shirey, Securities and Exchange Commission, Washington, D.C., for Amicus Curiae Securities and Exchange Commission.

Benjamin G. Shatz, Timi A. Hallem, and Jason T. Taketa, Manatt, Phelps & Phillips, LLP, Los Angeles, California, for Amici Curiae The Real Estate Roundtable and The National Association of Realtors.

**OPINION**

GOULD, Circuit Judge:

A transaction that looks nothing like a sale of stock and involving such diverse items as citrus groves and vacation homes may qualify as a sale of a security under federal law. *See SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946); *Hocking v. Dubois*, 885 F.2d 1449 (9th Cir. 1989) (en banc). Here, we must decide whether Plaintiffs-Appellants have alleged the sale of a security based on their purchase of condominiums in the Hard Rock Hotel San Diego. We hold that Plaintiffs have not adequately alleged facts showing that they were offered the real-estate and rental-management contracts as a package. And they have not alleged facts showing that they were induced to buy the condominiums by the rental-management agreement. For these reasons, Plaintiffs have not alleged the sale of a security, and so all of Plaintiffs' claims were properly dismissed.

**I**

Plaintiffs-Appellants, purchasers of condominiums in the Hard Rock Hotel San Diego, brought a putative class action against the Hotel's developer, operator, broker, and related entities. Because the district court dismissed the complaint on the pleadings, the facts come from the second amended complaint, except where otherwise noted.

The Hotel is a twelve-story, mixed-use development with commercial space and 420 condominium units. Through television and print advertising, the public was offered the opportunity to buy condominiums in the Hotel. Plaintiffs each did so and later signed a rental-management agreement.

Plaintiffs complain that the Purchase Contract they executed with 5th Rock, LLC not only sold them their condominiums but also obligated them to enter into the Rental Management Agreement with Tarsadia Hotels. Even though these contracts were executed with distinct entities eight to fifteen months apart,[1] Plaintiffs allege that these contracts together form an investment contract because Plaintiffs have no control over their units and expect a profit only through the efforts of the Hotel developer and operator. For example, Plaintiffs were not issued keys to their units but had to obtain keys from the Hotel operator when staying in their units. The units had to be operated as part of the Hotel, and certain Defendants were responsible for daily management, operation, and marketing of the units. Plaintiffs also note that a local zoning ordinance prohibited them from occupying their units for more than 28 days per year.

Plaintiffs contend that this alleged investment contract did not comply with federal and state securities laws. Plaintiffs' second amended complaint alleges eight claims for relief: (1) misrepresentation and omission in violation of § 12(a)(2) of the Securities Act of 1933; (2) misrepresentation and omission in violation of § 10(b) of the Securities Exchange Act of 1934; (3) sale of an unqualified security in violation of California Corporations Code §§ 25110, 25503, and 25504.1; (4) misrepresentation and omission in violation of California Corporations Code §§ 25401, 25501, and 25504.1; (5) rescission against an unlicensed broker-dealer under California Corporations Code § 25501.5; (6) control-person

---

[1] Plaintiffs' complaint does not allege when they signed the Purchase Contracts or Rental Management Agreements. Defendants' motion to dismiss, however, stated the date on which each contract was executed. Plaintiffs do not dispute these assertions.

liability under California Corporations Code § 25504; (7) common-law fraudulent misrepresentation; and (8) common-law fraudulent concealment.

Defendants are Tarsadia Hotels, the Hotel operator; 5th Rock, LLC, the developer; Gaslamp Holdings, LLC, the owner of the land on which the Hotel sits; MPK One, LLC, the controlling entity that manages 5th Rock; Tushar Patel, Chairman of Tarsadia Hotels; B.U. Patel, Vice Chairman and founder of Tarsadia Hotels; Greg Casserly, President of Tarsadia Hotels; and Playground Destination Properties, Inc., a real-estate brokerage.[2] Plaintiffs allege that Defendants, although separate legal entities, were "agents" or "co-conspirators" in perpetrating the fraud. But Plaintiffs allege no other facts describing Defendants' relationships with each other.

The district court dismissed the second amended complaint. The court's analysis turned primarily on its holding that Plaintiffs had not alleged that the condominium units constituted a security. Alternatively, the district court held that the securities claims were time-barred and that the fraud claims were not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). The district court denied leave to amend because "Plaintiffs have had ample opportunity to properly plead a case and have failed to do so."

This timely appeal followed.

---

[2] All other defendants were voluntarily dismissed with prejudice.

## II

We review *de novo* the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *N. Cnty. Cmty. Alliance, Inc. v. Salazar*, 573 F.3d 738, 741 (9th Cir. 2009). "If support exists in the record, [a] dismissal [for failure to state a claim] may be affirmed on any proper ground, even if the district court did not reach the issue or relied on different grounds or reasoning." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully. *See id.* at 678–79. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). "[B]are assertions" are insufficient. *Id*. at 681; *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010). We "discount[] conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

We review a district court's decision to dismiss a complaint with prejudice for abuse of discretion. *Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012). A district court abuses its discretion if it applies the wrong legal rule or if its "application of the [correct] rule was illogical, implausible, or without support in the record." *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 698 & n.11 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc)).

## III

The crux of Plaintiffs' claims is that the sale of the hotel condominiums and the later Rental Management Agreement together constituted the sale of a security. We disagree and hold that the transactions did not constitute the sale of a security.

We review *de novo* whether a transaction is the sale of a security. *Hocking*, 885 F.2d at 1454. "Both section 2 of the Securities Act of 1933, 15 U.S.C. § 77b(1) (1982), and section 3 of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(1)(10) (1982), define the term 'security' to include any 'investment contract.'" *Id*. at 1455. "The term 'investment contract' has been interpreted to reach '[n]ovel, uncommon, or irregular devices, whatever they appear to be.'" *Id*. (alteration in original) (quoting *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 351 (1943)). "It embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Id*. (quoting *Howey*, 328 U.S. at 299). Stated simply, we have held that an investment contract is "(1) an investment of money, (2) in a common enterprise, (3) with an

expectation of profits produced by the efforts of others."[3] *Hocking*, 885 F.2d at 1455; *see also Howey*, 328 U.S. at 298–99.

Although "ordinary real estate investments . . . usually are not securities under either Federal or State law, the facts of each case determine whether or not particular instruments are securities." *Teague v. Bakker*, 35 F.3d 978, 987 n.9 (4th Cir. 1994) (quoting *Kosnoski v. Bruce*, 669 F.2d 944, 947 n.3 (4th Cir. 1982)); *Bender v. Cont'l Towers Ltd. P'ship*, 632 F. Supp. 497, 500–01 (S.D.N.Y. 1986); *see also* Thomas Lee Hazen, 1 Law Sec. Reg. § 1.6 (2013). As Shakespeare wrote, "[T]hat which we call a rose, [b]y any other name would smell as sweet." William Shakespeare, *Romeo and Juliet*, act 2, sc. 2. The same principle applies here when determining whether a real-estate transaction is a security: substance governs, not name or label or form. *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 848 (1975). What matters is the economic reality of the transaction. *Id*. So long as money is invested in a common enterprise with profits anticipated by virtue of others' work, there may be an investment contract.

In *Hocking v. Dubois*, sitting en banc, we held that there was a genuine issue of material fact whether the sale of a condominium along with a rent-pooling arrangement constituted a security. Hocking worked with real-estate agent

---

[3] Under California law, a security exists if the federal *Howey* standard is met or if the "risk capital test" is met. *Consol. Mgmt. Grp., LLC v. Dep't of Corps.*, 75 Cal. Rptr. 3d 795, 805 (Cal. Ct. App. 2008) (citing *Silver Hills Country Club v. Sobieski*, 361 P.2d 906, 907–08 (Cal. 1961)). But Plaintiffs did not argue the risk-capital theory in the district court or on appeal. We decline to analyze this case under a theory that Plaintiffs did not advance in the complaint or argue on appeal.

Dubois to find a condominium that he could use as an investment. *Hocking*, 885 F.2d at 1452. Dubois found a condominium in a resort complex and told Hocking that if he would buy the condominium, a rent-pooling arrangement would be available. *Id.* Under the rent-pooling arrangement, a management company

> is responsible for renting as many of the participating units in the complex as possible; the rental income from the units is pooled, and after each owner is assessed a pro rata share of [the management's] costs, each owner receives a pro rata share of the rental income, whether or not his individual unit has actually been rented.

*Id.* at 1453 n.4. The record showed and we emphasized "that but for the availability of the rental pool arrangement [Hocking] would not have purchased the condominium." *Id.* at 1453, 1455, 1458; *see also id*. at 1466 (Norris, J., dissenting).

We held that there was a genuine issue of material fact as to whether Dubois had offered Hocking the sale of a security.

> In attempting to determine whether a scheme involves a security, the inquiry is not limited to the contract or other written instrument. "Characterization of the inducement cannot be accomplished without a thorough examination of the representations made by the defendants as the basis of the sale. Promotional materials, merchandising approaches, oral assurances and contractual agreements were

> considered in testing the nature of the product
> in virtually every relevant investment contract
> case."

*Id.* at 1457 (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1039–40 (10th Cir. 1980)). Closely examining what had induced the sale, we held that there was a fact issue where Hocking had "put forward numerous facts concerning whether the condominium sale and rental agreements were presented to him as parts of one transaction." *Id.* at 1458. "We also cannot ignore the fact that . . . these agreements were entered into immediately following the purchase of the condominium." *Id.* We stressed that these facts "distinguish this case from a situation where, after a purchase and separate from any inducement to purchase, a [broker] arranges for a rental pool." *Id.* We then applied the *Howey* factors to the package of contracts and held that there was a genuine issue of material fact as to whether Dubois offered Hocking a security.

Here, by contrast, Plaintiffs' allegations are not sufficient to show that a security was sold when the condominiums were transferred. Plaintiffs allege no facts showing that the Purchase Contracts and the Rental Management Agreements were offered as a package. They do not allege that the Rental Management Agreement was promoted at the time of the sale. They do not allege that Defendants told them that the Rental Management Agreement would be forthcoming. They do not allege that they were told that the Rental Management Agreement would result in investment-like profits. But in *Hocking* our holding rested on facts supporting these types of

allegations.**[4]**  *Id*. at 1457–58 (noting that inducement can be shown through "a thorough examination of the representations made by the defendants as the basis of the sale"); *see also SEC v. Rubera*, 350 F.3d 1084, 1091 (9th Cir. 2003).

Plaintiffs allege that representations in the Hotel Guide and the Rental Management Agreement FAQs show that the Purchase Contract and Rental Management Agreement were a package, but they plead no facts establishing when the Guide and the FAQs were given to them.  If Plaintiffs did not have these documents before they signed the Purchase Contracts, the representations in these documents are irrelevant in assessing whether a security was "presented" to the Plaintiffs at that time.  *See Hocking*, 885 F.2d at 1458. For that matter, Plaintiffs do not even allege when the Purchase Contracts and Rental Management Agreements were signed.  In a motion to dismiss, it was Defendants who told the district court that the Rental Management Agreements were executed eight to fifteen months after the Purchase Agreements.  A large time gap between the real-estate purchase and the execution of a rental-management agreement may not be dispositive in every case.  *But see id*. (noting the significance of the rent-pooling agreement being

---

**[4]** In *Hocking*, we analyzed whether the real-estate and rent-pooling contracts were presented as a package before examining whether the transaction was a security under *Howey*.  *Hocking*, 885 F.2d at 1457–58. But regardless of whether we treat *Hocking* as requiring a threshold inquiry or as a component of the *Howey* test, the result is the same. Because Plaintiffs do not allege facts that show that they were induced to purchase the condominiums by the Rental Management Agreement, we look at the transactions separately.  And neither alone is an investment of money in a common enterprise with the expectation of profits by the efforts of others.  *See id.* at 1459–62.

signed "immediately" after the purchase agreement). Yet here, where Plaintiffs did not allege that the contracts were presented at the same time, the large time gap underscores our holding that Plaintiffs were not offered a security.[5]

Plaintiffs' strongest argument that the two contracts, signed about a year apart, form a single transaction is their assertion that the "economic reality" shows that the two transactions are part and parcel of one scheme. They contend that the Purchase Contract, combined with external factors, such as the zoning ordinance, gave them no choice but to sign the Rental Management Agreement when it was later presented. This argument has some force. *See Hocking*, 885 F.2d at 1461; *see also Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967). But to accept this argument, we not only would have to ignore the large time gap between the two transactions that were executed with different entities, but also the fact that Plaintiffs' complaint is void of any allegation that they were induced to buy the condominiums by the Rental Management Agreement. The economic reality as we see it is that these two transactions were distinct. Moreover, Plaintiffs' economic-reality argument rests on the implicit assumption that the only viable use for the condominiums was as an investment property, but there is no plausible reason why there cannot be a viable market for owner-occupied hotel-condominiums for use as short-term vacation homes. *See* Brief of Amici Real Estate Roundtable & National Association of Realtors 3–6. This conclusion

---

[5] At oral argument, Plaintiffs' counsel stated that he had evidence showing that the Rental Management Agreement was promoted at the time the Purchase Contracts were signed. But on appeal from the dismissal of the complaint, we review the complaint, not the representations of counsel at oral argument.

undercuts Plaintiffs' economic assumptions. *See Forman*, 421 U.S. at 858 (holding that a security does not exist "where [a consumer] purchases a commodity for personal consumption or living quarters for personal use").

Taking all non-conclusory facts alleged in the complaint as true, we hold that Plaintiffs have not alleged the sale of a security and thus have not stated claims for relief under federal or state securities law. *See* 15 U.S.C. §§ 77l(a)(2), 78j(b) (requiring a security); Cal. Corp. Code §§ 25110, 25401, 25501, 25501.5, 25503, 25504, 25504.1 (same). We affirm the district court's dismissal of the federal and state securities claims.[6]

Next we turn to Plaintiffs' common-law fraud claims. Unlike the securities-fraud claims, the common-law fraud claims do not necessarily require the sale of a security as an element of the claim. *See Okun v. Morton*, 250 Cal. Rptr. 220, 235 (Cal. Ct. App. 1988) (listing the elements of common-law fraud: misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damages). But here, Plaintiffs' claims actually do depend on the sale of a security because that fact is at the heart of Plaintiffs' theory of misrepresentation. Plaintiffs allege that Defendants fraudulently offered a security disguised as a real-

---

[6] The Securities and Exchange Commission as amicus urges the opposite result based, in part, on an SEC Release. *See* Guidelines as to the Applicability of the Federal Securities Laws to Offers and Sales of Condominiums or Units in a Real Estate Development, Securities Act Release No. 33-5347, 1973 WL 158443 (Jan. 4, 1973). But our conclusion here rests squarely on *Hocking*, which was decided after the Release was issued. And like Plaintiffs, the SEC overlooks the fact that Plaintiffs' complaint does not allege that the Plaintiffs were induced to purchase the condominiums by the Rental Management Agreement.

estate transaction and that the fraud concealed that the rental program was mandatory. But our holding that Plaintiffs have not alleged the sale of a security necessarily leads to the conclusion that Plaintiffs could not have been fraudulently sold a security for purposes of their theory of common-law fraud. And Plaintiffs have not plausibly pleaded that the Purchase Contract obligated them to sign the Rental Management Agreement because the transactions were not a package. Without the sale of a security, Plaintiffs have not pleaded facts showing that the common-law fraud claims survive a motion to dismiss.

Additionally, Plaintiffs' common-law fraud allegations do not satisfy Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law . . . that Rule 9(b)'s particularity requirement applies to state-law causes of action."). To meet this standard, Plaintiffs' complaint must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafosso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1054, 1055 (9th Cir. 2011) (internal quotation marks omitted). Plaintiffs' common-law fraud allegations fall short of Rule 9(b)'s standard because they do not identify when Defendants made the representations that Plaintiffs purport to be false. For this reason as well, we affirm the district court's dismissal of these claims.

## IV

We also hold that the district court did not abuse its discretion in denying leave to amend. "Although a district court should grant the plaintiff leave to amend if the

complaint can possibly be cured by additional factual allegations, '[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.'" *Zixiang Li*, 710 F.3d at 998 (alteration in original) (citation omitted) (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008)). A district court's discretion to deny leave to amend is "particularly broad" where the plaintiff has previously amended. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

Here, the district court denied leave to amend because "Plaintiffs have had ample opportunity to properly plead a case and have failed to do so." Indeed, the district court gave Plaintiffs specific instructions on how to amend the complaint, and Plaintiffs did not comply. Moreover, Plaintiffs' counsel represented to the district court that he knew additional facts that could solve the deficiencies in the complaint, but counsel never proffered these facts to the court. A plaintiff may not in substance say "trust me," and thereby gain a license for further amendment when prior opportunity to amend had been given. The district court did not abuse its discretion by denying leave to amend. *See In re Korean Air Lines Co., Ltd.*, 642 F.3d at 698 & n.11 (citing *Hinkson*, 585 F.3d at 1251).

**AFFIRMED.**