**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 9, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| ROBERT G. WING, as Receiver for VesCor Capital Corp. and VesCor Capital, Inc., Nevada corporations, VesCorp Capital LLC, VesCorp Capital IV-A, LLC, and VesCorp Capital IV-M, LLC, Nevada limited liability companies, and their related entities,<br><br>     Plaintiff-Appellee,<br><br>v.<br><br>BERNARD C. BUCHANAN; BERNARDO'S CORPORATION, a Nevada corporation; BUCHANAN FAMILY TRUST; B&I BUCHANAN FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership; BUCHANAN FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership; BUCK INVESTMENTS, LLC; BAKI, LLC,<br><br>     Defendants-Appellants. | No. 12-4123<br><br>(D.C. No. 2:08-CV-00803-DB)<br>(D. Utah) |

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendants[1] appeal the district court's grant of summary judgment that holds them jointly and severally liable for millions of dollars of fraudulent transfers received from an alleged Ponzi scheme. We reverse and remand, concluding that the applicable statute of limitations may bar the receiver from recovering some of these transfers.

**I**

*Factual Background*

This is the latest in a series of cases that stem from the collapse of VesCor Capital.[2] The receiver appointed by the district court, Robert G. Wing, alleges that VesCor was a Ponzi scheme. He has sought to recover as fraudulent transfers payments VesCor made to investors.

Buchanan is one of those investors. Although the exact amounts are in dispute, Wing asserts Buchanan invested nearly $21 million individually and through entities he controlled. VesCor paid out more than $27 million to those same entities.

*Procedural History*

VesCor Capital Inc. filed for Chapter 11 bankruptcy in Utah on May 30, 2007. Chapter 11 Voluntary Petition, In re VesCor Capital Inc., No. 07-22435 (Bankr. D. Utah

---

[1] The full list of named defendants includes: Bernard C. Buchanan, an individual; Bernardo's Corporation, a Nevada corporation; Buchanan Family Trust; B&I Buchanan Family Limited Partnership, a Nevada limited partnership; Buchanan Family Limited Partnership, a Nevada limited partnership; Buck Investments, LLC, a Nevada limited liability company; BAKI, LLC, a Nevada limited liability company.

[2] See Wing v. Gillis, No. 12-4071, 2013 WL 2169321 (10th Cir. May 21, 2013) (unpublished); Wing v. Dockstader, 482 F. App'x 361 (10th Cir. 2012) (unpublished); SEC v. Vescor Capital Corp., 599 F.3d 1189 (10th Cir. 2010).

May 30, 2007). On July 6, 2007, the bankruptcy court ordered the appointment of a trustee, "[f]inding that the debtor engaged in pre-petition fraud, dishonesty, incompetence, gross mismanagement, a failure to keep adequate records, and a history of transactions with companies affiliated with the debtor." Order for the Appointment of a Chapter 11 Trustee at 1-2, id., July 6, 2007.

Notwithstanding the bankruptcy proceedings, the Securities and Exchange Commission in February 2008 filed a complaint against various VesCor entities—including VesCor Capital Inc.—alleging that the companies had violated securities laws. The complaint accused VesCor founder Val E. Southwick of "operat[ing] a massive Ponzi scheme, paying existing noteholders with funds from new investors." Complaint at 2, SEC v. VesCor Capital Corp., No. 1:08-cv-00012-DB (D. Utah Feb. 6, 2008). In May 2008, the district court appointed Wing as a receiver.

Wing filed a complaint against Buchanan and the related entities in October 2008. The complaint alleged a single cause of action for fraudulent transfer. The complaint asserted that "[b]ecause the payments [to Buchanan] were made as part of a Ponzi scheme, these transfers were, by definition, made to hinder, delay or defraud creditors and/or investors of VesCor." App. Vol. I at 6. Wing subsequently filed a motion for summary judgment seeking the return of $6,290,886 in "fictitious" profits—that is, the difference between the payments Buchanan and the related entities received, in aggregate, and the amounts they invested. Id. at 17-18, 20. Wing also sought the return of $57,460 in referral fees that Buchanan received for recruiting new investors. Id. at 20.

3

The district court granted summary judgment in favor of Wing. The court awarded a judgment of $4,581,047, plus prejudgment interest. The defendants appealed, but we dismissed for lack of jurisdiction because the district court had not yet calculated prejudgment interest. See App. Vol. VI at 935-36. The district court in June 2012 modified its judgment to eliminate prejudgment interest and entered a final judgment in the amount of $4,581,047.

The defendants again appealed, raising four issues. First, defendants argue that the district court had no legal basis for imposing joint and several liability for the fraudulent transfers. Second, they argue that the statute of limitations bars the recovery of many of the alleged fraudulent transfers. Third, defendants argue that they cannot be held liable for transfers that they received before 2000—the earliest year the receiver's expert will attest that VesCor began to exhibit the characteristics of a Ponzi scheme.[3] Finally, defendants argue that genuine issues of material fact still exist regarding a number of issues, such as if and when VesCor actually became a Ponzi scheme.

**II**

*Standard of Review*

We review a decision to grant summary judgment de novo, applying the same standard as the district court. Squires v. Breckenridge Outdoor Educ. Ctr., 715 F.3d 867,

---

[3] Wing's expert witness used 2000 as a starting date because "this is when the availability and completeness of records and accounting information improved." App. Vol. I at 47 n.6.

872 (10th Cir. 2013). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We draw all reasonable inferences from the evidence in favor [of defendants] as the nonmoving party." Taylor v. Roswell Indep. Sch. Dist., 713 F.3d 25, 34 (10th Cir. 2013) (alteration and quotation omitted).

*Statute of Limitations*

Wing pursued the transfers VesCor made to the defendants by using the existence of an alleged Ponzi scheme as evidence of actual fraud. See Merrill v. Abbott (In re Indep. Clearing House Co.), 77 B.R. 843, 860 (D. Utah 1987) ("One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme."). Under Utah's Uniform Fraudulent Transfer Act, a plaintiff seeking to recoup transfers based on allegations of actual fraud must file his complaint "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Utah Code Ann. § 25-6-10. At issue in this case is when the discovery period began to run. The defendants argue that, at the latest, the one-year statute of limitations started when the bankruptcy court appointed a trustee, which was ten months before Wing's appointment as receiver.

As an initial matter, we must decide whether the one-year statute of limitations began to run when any objectively reasonable person could have discovered the fraudulent transfers, or if the start of the discovery period was delayed until Southwick no

5

longer controlled the companies. We believe that Utah would adopt the "adverse domination" theory so that the discovery period would not begin to run until the bad actors controlling an entity were removed. See Wing v. Dockstader, 482 F. App'x 361, 364-65 (10th Cir. 2012) (unpublished); see also Resolution Trust Corp. v. Smith, 872 F. Supp. 805, 814 n.4 (D. Or. 1995) ("[T]he doctrine of adverse domination, as a corollary of the discovery rule, determines the time of accrual of a cause of action."). The adverse domination theory recognizes that "[c]ontrol of the [company] by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to initiate any action contrary to their own interests." See FDIC. v. Appling, 992 F.2d 1109, 1115 (10th Cir. 1993) (quotation omitted). Southwick obviously had no incentive to file fraudulent transfer actions to claw back money from investors—it would have required revealing his own fraud. But see Nasr v. De Leon, 18 F. App'x 601, 605 n.4 (9th Cir. 2001) (unpublished) ("We hold that the doctrine [of adverse domination] is wholly inapplicable in this case because it applies only when a suit is brought against a self-dealing agent of an organization.").

We cannot determine on the record before us, though, how to apply the discovery rule to the transfers made in this case. For example, it may be reasonable to use the court's appointment of a bankruptcy trustee to oversee VesCor Capital Inc. as the start date for the one-year statute of limitations.[4] But not all the transfers that Buchanan

---

[4] But we take no position on whether those alleged fraudulent transfers "could
(continued...)

received came from that entity. Although Buchanan asserts we should nonetheless hold that the statute of limitations began to run with the trustee's appointment because the trustee could have brought all the VesCor entities under his control, we decline to do so in the first instance.[5] The statute of limitations raises significant factual questions that the district court is better equipped to address and resolve. We therefore vacate the district court's order granting summary judgment and remand for the district court to determine which of the alleged fraudulent transfers "could reasonably have been discovered" by the bankruptcy trustee—thus triggering the one-year statute of limitations.

In vacating the district court's order, we reject two arguments put forth by Wing. Wing argues that the earlier appointment of the bankruptcy trustee has no bearing on the statute of limitations because Wing, as the receiver, is the "claimant" referred to in the statute. See Aplee. Br. at 4. We disagree. The receiver has no claims to bring on his own behalf; instead, he brings them on behalf of the companies. Therefore, it is the companies and the creditors that are the "claimants" that benefit from the discovery rule. The receiver's mere appointment cannot resurrect otherwise stale claims.

Moreover, Wing's interpretation could leave the statute of limitations open to manipulation. If the receiver, rather than the company, is the "claimant," he could

---

[4](...continued)
reasonably have been discovered" the day the trustee was appointed.

[5] Here, too, we take no position as to whether the trustee could have exercised the control over the other entities sufficient to trigger the beginning of the statute of limitations. We leave this question for the district court to resolve with the benefit of additional—and more focused—briefing.

subvert the statute of limitations by placing one of the other VesCor entities into bankruptcy. Under Wing's interpretation, the clock on the one-year statute of limitations would then restart because a new "claimant"—the trustee—was in place. We do not believe the statute dictates such a result.

Wing also argues that the district court had discretion to disregard the statute of limitations based on the equitable principles that govern a receivership. We decline to affirm on this ground for two reasons. First, we do not know whether the district court actually invoked equitable principles in rejecting the statute of limitations defense. The district court did not address the statute of limitations in its written order—much less explain its reasons for rejecting it.[6]

Second, we remain uncertain as to whether the district court would even have the equitable discretion to reject this defense merely because a receivership is involved. To be sure, the "district court has broad powers and wide discretion to determine relief in an equity receivership." SEC v. VesCor Capital Corp., 599 F.3d 1189, 1194 (10th Cir. 2010) (alteration and quotation omitted). But that relief relates to the *distribution* of the receivership assets. Here, it is not clear that the district court is sitting in equity.[7] This

_____

[6] In a hearing, the district court later suggested equitable concerns motivated its decision to impose joint and several liability. App. Vol. VII at 999.

[7] Like in bankruptcy, parties that file claims against a trustee or receiver open themselves up to counterclaims as part of those proceedings. See Katchen v. Landy, 382 U.S. 323, 325 (1966); Alexander v. Hillman, 296 U.S. 222, 241 (1935) ("By presenting their claims respondents subjected themselves to all the consequences that attach to an appearance."). Here, the receiver filed a separate complaint. Even when filed in the same

(continued...)

8

complaint was not brought as part of the receivership proceedings—it is a separate action brought by the receiver on VesCor's behalf. True, the case was assigned to the same judge who is overseeing the receivership. But nothing inherent in the nature of an equitable receivership even requires that the receiver bring lawsuits in the same district court in which he was appointed.[8] See 28 U.S.C. § 754 ("[A receiver] shall have capacity to sue in any district without ancillary appointment."); see also 12 Charles Alan Wright et al., Federal Practice and Procedure § 2984 (2d ed., April 2013 update) ("[A] federal receiver appointed under Rule 66 may sue in any district court without any need for the appointment of an ancillary receiver, provided, of course, that the court has subject-matter jurisdiction." (footnote omitted)).

Wing cites Broadbent v. Advantage Software, Inc. for the proposition that "in fashioning relief in an equity receivership, a district court has discretion to summarily reject formalistic arguments"—such as statute of limitation defenses—"that would

---

[7](...continued)
district court in which the receiver was appointed, these proceedings need not necessarily be heard by the same judge overseeing the receivership. Compare Donnell v. Keppers, 835 F.Supp. 2d 871 (S.D. Cal. 2011) (Chief Judge Gonzalez dismissing fraudulent transfer complaint made by receiver) with SEC v. Learn Waterhouse, Inc., Order Granting Successor Receiver's and Professionals' Tenth Interim Application for Approval and Payment of Fees and Expenses, No. 3:03-cv-02037-W-DHB (S.D. Cal. May 20, 2013) (Judge Whelan granting order in his capacity overseeing the receivership).

[8] For example, in United States v. Franklin Nat'l Bank, 512 F.2d 245 (2d Cir. 1975), a federal receiver appointed in the Southern District of New York filed a lawsuit in the Eastern District of New York. The Second Circuit noted that the receiver could do so "without undergoing the bothersome procedure of preliminary ancillary appointment," although the court ultimately concluded that the receiver did not have the necessary independent basis of jurisdiction for filing a complaint in the Eastern District.

9

otherwise be available in a traditional lawsuit." 415 F. App'x 73, 78 (10th Cir. 2011) (unpublished). But the cases involving a receiver that <u>Broadbent</u> cited to support this statement undermine the case for applying the rule here. Each of the cases cited in <u>Broadbent</u> in some way involved the distribution of assets already within the receiver's control.[9] <u>See</u> <u>Quilling v. Trade Partners, Inc.</u>, 572 F.3d 293, 298-99 (6th Cir. 2009) (rejecting plaintiff's attempt to separate his claim from the rest of the receivership estate); <u>United States v. Durham</u>, 86 F.3d 70, 72 (5th Cir. 1996) (assessing challenge to distribution plan); <u>United States v. Vanguard Inv. Co.</u>, 6 F.3d 222, 227 (4th Cir. 1993) (discussing considerations in deciding whether party was entitled to claim); <u>SEC v. Elliott</u>, 953 F.2d 1560, 1566 (11th Cir. 1992) (assessing challenge to distribution plan). It is not clear, however, that the receiver may simply invoke equitable principles when it seeks to recover fraudulent transfers made to investors, even if the receiver could consider those excess payments as a factor in designing its equitable distribution plan. <u>Cf.</u> <u>Donell v. Kowell</u>, 533 F.3d 762, 772 (9th Cir. 2008) (noting in receiver's fraudulent transfer action that "[a]lthough all payments of fictitious profits are avoidable as fraudulent transfers, the appropriate statute of limitations restricts the payments the Ponzi scheme investor may be required to disgorge").

---

[9] <u>Broadbent</u> itself is, of course, an unpublished case without precedential value. <u>See</u> 10th Cir. R. 32.1.

## III

We therefore VACATE the district court's order granting summary judgment in favor of Wing and REMAND for further proceedings.

Entered for the Court

Mary Beck Briscoe
Chief Judge

11