**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1338**

MARTIN P. SHEEHAN, Trustee of the Bankruptcy Estate of AGS, Inc.,

              Plaintiff - Appellant,

        v.

ALLEN G. SAOUD,

              Defendant - Appellee,

        and

GEORGIA D. DANIEL; FRED D. SCOTT; WEST VIRGINIA DERMATOLOGY ASSOCIATES, INC.; ROBERT R. FRASER; CENTRAL WEST VIRGINIA DERMATOLOGY ASSOCIATES, INC.,

              Defendants,

UNITED STATES OF AMERICA,

              Intervenor/Defendant.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.    Irene M. Keeley, District Judge.  (1:11-cv-00163-IMK-JSK)

Argued:  March 24, 2016                    Decided:  May 24, 2016

Before WILKINSON and NIEMEYER, Circuit Judges, and David C. NORTON, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished opinion. Judge Norton wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

───────────────

**ARGUED:** Martin Patrick Sheehan, SHEEHAN & NUGENT, P.L.L.C., Wheeling, West Virginia, for Appellant. Paul J. Harris, HARRIS LAW OFFICES, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Patrick S. Cassidy, CASSIDY, COGAN, SHAPELL & VOEGELIN, L.C., Wheeling, West Virginia, for Appellant.

───────────────

Unpublished opinions are not binding precedent in this circuit.

NORTON, District Judge:

This case is on appeal from a post-trial judgment awarded by the Honorable Irene M. Keeley, United States District Judge for the Northern District of West Virginia. For the reasons set forth below, we affirm the district court's ruling.

I.

Appellant Martin P. Sheehan ("Sheehan") is the trustee of the bankruptcy estate of AGS, Inc. ("AGS"). Appellee Allen G. Saoud ("Saoud") was a licensed doctor of Osteopathic Medicine, specializing in dermatology, who owned and operated AGS as a medical corporation in West Virginia. On January 25, 2005, the United States filed charges against Saoud, alleging that between May 1998 and June 2004, Saoud submitted unsupported medical billing claims to Medicare and Medicaid. Saoud entered into a settlement agreement with the United States under which he was required to pay $310,800.58 in penalties, but he was not required to admit liability. The settlement agreement also excluded Saoud from participating in Medicare, Medicaid, and all other federal health programs, for ten years. Thereafter, on March 31, 2006, Saoud sold AGS to Georgia G. Daniel ("Daniel"), a nurse practitioner who previously worked in Saoud's dermatology practice, for $1,000,000.00. Under the terms of the contract between Daniel and Saoud, Daniel would not be

3

personally liable for AGS's liabilities. Daniel also would not be personally liable to Saoud for the purchase price.

After Saoud sold AGS to Daniel, various transfers were made from AGS to Saoud and Daniel. Relevant to this appeal, AGS paid Saoud $50,000.00 in 2008.[1] Additionally, a certified copy of a deed recorded in Harrison County, West Virginia shows that real estate titled to AGS was sold to MedStar Real Estate Development on March 23, 2005 for $460,000.00. The proceeds of the sale were not paid to AGS but rather to AGS Development Company, another entity controlled by Saoud. Further, Daniel received a combined $418,675.00 from AGS in 2006, 2007, and 2008.

On May 9, 2009, AGS filed for Chapter 7 bankruptcy relief. The Bankruptcy Court appointed Sheehan to serve as Trustee. Saoud signed the original petition for bankruptcy relief, in which he identified himself as the President and Owner of AGS. However, during a meeting of creditors held on June 18, 2009, Saoud subsequently indicated that he had sold his stock in AGS to Daniel. Saoud confirmed that he was not an owner or officer of AGS during a continued meeting of creditors held on August 18, 2009. On May 12, 2010, Saoud claimed that Daniel signed a

---

[1] In the underlying action, Sheehan originally sought $250,000.00 from Saoud, representative of the total value of all transfers AGS made to Saoud after the sale to Danial. See J.A. 54–55. However, the only transfer subject to this appeal is the 2008 transfer of $50,000.00 from AGS to Saoud.

corporate resolution authorizing Saoud to file a bankruptcy petition on behalf of AGS. On August 23, 2010, Daniel testified that she did not authorize Saoud to seek bankruptcy relief on behalf of AGS and denied that the signature on the corporate resolution was in fact hers. Saoud filed a motion to dismiss the bankruptcy petition, and Sheehan opposed the motion. On November 11, 2010, the Bankruptcy Court for the Northern District of West Virginia denied the motion to dismiss.

In December 2012, a federal grand jury returned a twenty-three count indictment charging Saoud with health care fraud, concealing a material fact in a health care matter, corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, making a false oath or account in relation to a bankruptcy case, and making a false statement to a federal agent. In May 2013, the grand jury returned a superseding indictment containing no additional charges. Subsequently, on June 4, 2013, the grand jury returned a third superseding indictment, which added new charges of health care fraud and aggravated identity theft. On June 25, 2013, Saoud was convicted after a jury trial of thirteen counts of health care fraud, one count of aggravated identity theft, one count of concealing a material fact in a health care matter, one count of corruptly endeavoring to obstruct and impede the due

administration of the internal revenue laws, five counts of making a false oath or account in relation to a bankruptcy case, and one count of making a false statement to a federal agent. Saoud was sentenced to ninety-nine months' imprisonment on March 25, 2014, and received a fine of $2,630,000.00. The Fourth Circuit affirmed his convictions and sentence in December 2014. United States v. Saoud, No. 14-4288, 2014 WL 7210734, at *1 (4th Cir. Dec. 19, 2014).

Sheehan, in his capacity as trustee of AGS, filed a complaint on October 13, 2011, in the United States District Court for the Northern District of West Virginia. Sheehan subsequently filed an amended complaint on October 6, 2014, against Appellee Saoud, Daniel, Fred D. Scott ("Scott"),[2] Robert R. Fraser ("Fraser"),[3] and Central West Virginia Dermatology Associates, Inc. ("CWVDA"), asserting the following six causes of action: Count I alleged that CWVDA failed to complete payments to AGS and remains indebted to AGS for $634,159.00; Count II alleged that the agreements between Saoud, Daniel, and Scott were voidable as fraudulent transfers pursuant to 11 U.S.C. § 547, because the agreements constituted a scheme to

---

[2] Scott practiced dermatology with Saoud at AGS, served as director of CWVDA, and was involved in some of the transactions at issue.

[3] Fraser is an accountant who prepared tax returns for Daniel and CWVDA.

6

defraud AGS's creditors by transferring AGS's assets for less than reasonably equivalent value, causing AGS to become insolvent; Count III alleged that the transfers were voidable by a trustee in bankruptcy pursuant to the powers established under 11 U.S.C. § 544 and under the West Virginia Uniform Fraudulent Transfer Act ("WVUFTA"), W. Va. Code §§ 41-1A-1 et seq.; Count IV alleged that the actions outlined above constitute a civil conspiracy to violate the WVUFTA and are actionable as a civil conspiracy; Count V alleged that Fraser aided and abetted the scheme to defraud AGS's creditors under the WVUFTA; and Count VI alleged that Saoud committed bankruptcy fraud and used the United States mails to effectuate his scheme to defraud. Sheehan sought to recoup the $50,000.00 that AGS paid to Saoud in 2008, the $418,000.00 paid to Daniel after the sale, and the $460,000.00 from the sale of certain real estate AGS owned.

Daniel and Fraser settled with Sheehan and were dismissed as defendants on May 15, 2012. The district court therefore dismissed Count V, against Fraser only, as moot. On October 20, 2014, Sheehan filed a motion for summary judgment against Saoud, and Scott filed a motion for summary judgment against Sheehan's claims and Saoud's cross claims. On January 28, 2015, the court granted in part and denied in part Scott's motion for summary judgment and denied Sheehan's motion for summary judgment. J.A.

7

111-161.  The court granted Scott's motion for summary judgment as to Count IV, holding that a claim under the WVUFTA was based in contract and not tort and therefore could not support a civil conspiracy action.  J.A. 133, 158-59.  The court further found that even if Sheehan had pleaded a tort, the factual allegations contained in his amended complaint were "wholly inadequate" to support a civil conspiracy claim.  J.A. 133-34.  Sheehan thereafter abandoned Counts I, II, and VI and pursued only Counts III and IV.  J.A. 160, 187.  Sheehan sought to recoup the $50,000.00 that AGS paid to Saoud in 2008 and the $460,000.00 from the sale of certain real estate AGS owned.  J.A. 314-315.  However, in light of the court's ruling on the statute of limitations issues relating to the money transfers, as fully set forth below, the only question submitted to the jury involved the real estate transfer.  J.A. 340.

A jury trial was held on March 2-3, 2015.  The jury returned a verdict on March 3, 2015.  The jury found that Sheehan did not "file suit within one year after he knew, or reasonably could have discovered, the real estate transfer from AGS to MedStar Real Estate and Development, LLC, for $460,000.00 . . . ."  J.A. 230.  The jury unanimously found in favor of Saoud.  The district court affirmed the verdict, J.A.

8

233, and Sheehan filed a notice of appeal on April 1, 2015. J.A. 236.

## II.

We review the denial of summary judgment de novo, applying the same standards as the district court. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir.1995). In reviewing a denial of summary judgment, we view all facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119–20 (4th Cir. 2011). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as matter of law. Fed. R. Civ. P. 56(a); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013).

We review the denial of a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the nonmovant, and "draw[ing] all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." Ocheltree v. Scollon Prod., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (quoting Anderson v. G.D.C., Inc., 281 F.3d 452, 457 (4th Cir. 2002)). Judgment as a matter of law is proper only if "there can be but one reasonable conclusion as

9

to the verdict." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

## III.

Sheehan raises the following issues on appeal: "(1) whether the district court erred when it concluded that the doctrine of adverse domination did not toll the statute of limitations/repose under the West Virginia Uniform Fraudulent Transfer Act; (2) whether the district court erred in applying the statute of limitations/repose to find that evidence of a transfer in 2008 was outside the statute of limitations/repose because it was a payment due under what purported to be a contract signed in 2005; (3) whether the district court erred in concluding that a cause of action for civil conspiracy under West Virginia law could not be based on a violation of the West Virginia Uniform Fraudulent Transfer Act even where plaintiff attempted to prove a subjective violation of the statute with 'actual intent to hinder, delay, or defraud.'" Appellant's Br. 1.

## A.

We turn first to Sheehan's contention that the district court erred when it concluded that the doctrine of adverse domination did not toll the statute of limitations or repose under the WVUFTA.

10

As a threshold matter, Sheehan failed to properly preserve this issue for appeal. During the Rule 50 hearing on March 2, 2015, Sheehan's attorney had the following exchange with Judge Keeley:

> Court: [M]y finding is that that is the transfer or that is the obligation and that those later payments are not the transfer and it certainly was, not only could, but was reasonably discovered by the Trustee, as pled in paragraph 18 of document 51 of the bankruptcy proceedings on 9/9/10, discovered at least at that point in time and therefore I am going to grant the motion under Rule 50 and dismiss that part of the claim and it will not carry to the jury. So— and I'm ruling on that as a matter of law. So I think that what's left and what goes to the jury is the real estate transaction, which is four hundred and sixty thousand dollars. It goes to the jury. Is there anything left? . . . Now in light of that, is the question of adverse domination still in the case?
>
> Mr. Cassidy: We don't need it. We don't need it now.
>
> The Court: Okay. So there's no adverse domination.

J.A. 340–41. Based on the aforementioned passage from the hearing and the court's entire discussion regarding adverse domination with Mr. Cassidy, Sheehan's trial counsel, it is clear that Sheehan abandoned his adverse domination arguments prior to the trial, and the court never made a ruling in that regard. See J.A. 315–40. Therefore, Sheehan failed to properly preserve this issue for appeal. See In re Under Seal, 749 F.3d 276, 285–86 (4th Cir. 2014) (discussing the consequences of failing to preserve a claim for appeal); see also Corti v.

11

<u>Storage Tech. Corp.</u>, 304 F.3d 336, 343 (4th Cir. 2002) (Niemeyer, J., concurring) ("[I]t remains the law of this circuit that when a party to a civil action fails to raise a point at trial, that party waives review of the issue unless there are exceptional or extraordinary circumstances justifying review.").

However, even if Sheehan had properly preserved the issue for appeal, the statute of repose would still have expired one month prior to Sheehan filing suit, regardless of the application of adverse domination. A creditor must bring suit to enforce the provisions of the WVUFTA, W. Va. Code § 40-1A-4(a)(1)-(2), within "four years after the transfer was made or the obligation incurred, or, if later, <u>within one year after the transfer or obligation was or could reasonably have been discovered by the claimant</u>." W. Va. Code § 40-1A-9 (emphasis added). Because Sheehan filed suit on October 13, 2011, October 13, 2007 is the latest date on which the alleged fraudulent transfers could have occurred such that he may obtain relief, unless Sheehan establishes that he could not reasonably have discovered the alleged fraudulent transfer or obligation more than one year before filing suit. Sheehan argues that the statute of limitations should be tolled by the doctrine of

12

adverse domination, giving him four years from the date on which he was appointed to bring suit.

"Adverse domination is an equitable doctrine that tolls statutes of limitations for claims by corporations against its officers, directors, lawyers and accountants for so long as the corporation is controlled by those acting against its interests." Clark v. Milam, 452 S.E.2d 714, 718 (W. Va. 1994) (citing Int'l Rys. of Central Am. v. United Fruit Co., 373 F.2d 408, 412 (2d Cir. 1967)). The adverse domination doctrine tolls the statute "so long as there is no one who knows of and is able and willing to redress the misconduct of those who are committing the torts against the corporate plaintiff." Clark v. Allen, 139 F.3d 888 (4th Cir. 1998) (quoting Milam, 452 S.E.2d at 719). "[T]he defendants have the burden of showing that there was someone who had the knowledge, ability and motivation to bring suit during the period in which defendants controlled the corporation." Id. (quoting Hecht v. Resolution Trust Corp., 635 A.2d 394, 408 (Md. 1994)) (internal quotation marks omitted).

Sheehan cites several cases from the Tenth Circuit in support of his appeal and relies on two unpublished Tenth Circuit opinions as "particularly legally similar." Appellant's Br. 15–16 (citing Wing v. Buchanan, 533 F. App'x 807 (10th Cir.

13

2013); <u>Wing v. Dockstader</u>, 482 F. App'x 361 (10th Cir. 2012)). Both unpublished opinions involved a series of cases that stemmed from the collapse of VesCor Capital and the receiver's subsequent attempts to recover VesCor's alleged fraudulent transfers to investors. <u>Buchanan</u>, 533 F. App'x at 809. Analyzing statute of limitations issues in <u>Buchanan</u>, the court recognized that under Utah's Fraudulent Transfer Act,[4] a plaintiff seeking to recoup transfers based on allegations of actual fraud must file his complaint "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." <u>Id.</u> at 810. At issue was when the discovery period began to run. <u>Id.</u> The court applied the doctrine of adverse domination to hold that the discovery period would not begin to run until the bad actors controlling the entity were removed. <u>Id.</u> The court held that, based on the record, it could not determine how to apply the discovery rule to the alleged fraudulent transfers. <u>Id.</u> at 811. The court remanded the case back to the district court "to determine which of the alleged fraudulent transfers 'could

---

[4] The Utah Uniform Fraudulent Transfer Act and the WVUFTA have the same statute of limitations and repose provisions.

14

reasonably have been discovered' by the bankruptcy trustee—thus triggering the one-year statute of limitations." Id.

In Dockstader, applying the statute of repose discussed above, the court held that the receiver could not reasonably have discovered any fraudulent transfer prior to his appointment. 482 F. App'x at 364. The court recognized the adverse domination doctrine and found that "[b]ecause the [r]eceiver was appointed on May 5, 2008 and filed this action just over five months later," the receiver's claims were timely. Id. The Tenth Circuit's holdings in Buchanan and Dockstader do not support Sheehan's position because even after recognizing the doctrine of adverse domination, the court applied the one-year statute of repose under Utah's Fraudulent Transfer Act—the same one-year statute of repose under the WVUFTA.

Applying the same reasoning as the Tenth Circuit in Buchanan and Dockstader, Sheehan's claims are barred. On September 9, 2010, Sheehan filed an opposition to Saoud's motion to withdraw the bankruptcy petition in which he stated:

> The Trustee has identified several valuable causes of action to recover assets for the bankruptcy estate of AGS, Inc. These include actions to recover fraudulent and preferential transfers to Allen G. Saoud and Georgia Daniel.

J.A. 337. The district court held that the statute of limitations could only be tolled until this date because Sheehan

15

clearly had knowledge of the fraudulent transfers by that time. The district court then applied the one-year statute of repose outlined above. It is clear that not only could Sheehan reasonably have discovered the fraudulent transfers by September 9, 2010, but that he did in fact discover the alleged fraudulent transfers as of that date. Unlike the bankruptcy trustees in Buchanan and Dockstader, Sheehan had knowledge of the alleged fraudulent transfers more than a year before he filed suit. Thus, even if the doctrine of adverse domination were to apply, the statute of repose expired one year after Sheehan's September 9, 2010 filing in the Bankruptcy Court and one month before Sheehan filed suit on October 13, 2011.

Accordingly, even if Sheehan had properly preserved the adverse domination issue for appeal, he would not be entitled to the relief requested.

B.

Sheehan next argues that the district court erred by concluding that his action to recover the $50,000.00 payment from AGS to Saoud in 2008 was barred by the four-year statute of limitations because the payment was made in connection with the 2006 sale to Daniel. Appellant's Br. 17.[5]

_____

[5] Although Sheehan states in his brief that the transfer at issue occurred in 2005, it is clear from the entirety of Sheehan's brief that he is referring to the March 31, 2006 sale

16

To enforce the provisions of the WVUFTA, the creditor must bring suit "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." W. Va. Code Ann. § 40-1A-9. West Virginia Code section 40-1A-6(d) provides that:

> A transfer is not made until the <u>debtor has acquired rights in the asset transferred and an obligation is incurred</u>. If the obligation is oral, a transfer is made when the obligation becomes effective. If the obligation is evidenced by a writing, the obligation becomes effective when the writing is delivered to or for the benefit of the obligee.

W. Va. Code Ann. § 40-1A-6(d) (emphasis added). The district court found that the 2008 payment was made pursuant to AGS's obligation incurred on the 2006 sale instrument. Therefore, the "transfer"—as defined under the WVUFTA—occurred in 2006, beginning the running of the statute of limitations at that time. The district court found that even if the discovery rule as outlined in the statute of repose applies, the clock stopped running on September 9, 2010. Once again, Sheehan's knowledge of the alleged fraudulent transfers by September 9, 2010, at the latest, is evidenced by his filing with the bankruptcy court.

---

of AGS to Daniel, and therefore the 2008 payment of $50,000.00 to Saoud. <u>See</u> Appellant's Br. 17–19. Further, during oral argument, the parties clarified that the transfer in dispute is indeed the $50,000.00 transfer from AGS to Saoud.

See J.A. 337. Therefore, because Sheehan did not file suit until October 13, 2011, more than a month after the statute of repose expired, the district court held that Sheehan's WVUFTA claims relating to the 2008 transfer were barred by the statute of repose.

The district court based its ruling on LaRosa v. LaRosa, 482 F. App'x 750 (4th Cir. 2012), an unpublished Fourth Circuit opinion. In LaRosa, two brothers loaned their cousin and his wife ("the debtors") $800,000.00. Id. at 751. The cousin was the sole shareholder of a company called Cheyenne. Id. In 2001, Cheyenne entered into a loan agreement with a bank that permitted Cheyenne to borrow up to $950,000.00 on a line of credit. Id. at 753. The cousin pledged a series of securities to secure the line of credit. Id. In 2003, the cousin's son drew down $700,000.00 on the line of credit with the bank, and Cheyenne purchased over a million dollars in annuities with the money. Id. The annuities were owned and controlled by Cheyenne but the accounts were used to transfer money to the cousin's son according to a sham land renewal lease. Id. The district court found the scheme fraudulent under the WVUFTA and awarded the creditors $700,000.00. Id.

On appeal of the judgment, this Court addressed whether the plaintiffs' WVUFTA claim "based on a corporation's drawdown on

18

its line of credit and purchase of annuities was time-barred." Id. at 751. This Court held that the "transfer" in question was not the 2003 drawdown but rather the original establishment of the line of credit in 2001. Id. at 755. Therefore, the Court held that because the creditors did not file their claim within four years of the establishment of the line of credit, their claim was barred by the WVUFTA statute of repose. Id. at 753 ("Because the language and history of the statute of repose make clear that it runs from the date of the security pledge, we reverse the district court and hold that the Creditors' WVUFTA claim on the line of credit was time-barred."). Judge Keeley relied on this Court's reasoning in LaRosa to hold that the 2008 transfer was an obligation incurred under the 2006 sales contract. J.A. 152; 339-40. Therefore, because Sheehan did not file suit until October 13, 2011, his claim was barred by the four year statute of limitations. Id.

A dissenting opinion in LaRosa interpreted the term "transfer" under the WVUFTA differently than the majority. LaRosa, 482 F. App'x at 758-59. Analyzing the statute of limitations provisions of the WVUFTA, the dissent stated the following:

> By employing the definite article, the last clause, "within four years after the transfer was made," refers back to the opening clause—"[a] cause of action with respect to a fraudulent transfer." West

19

> Virginia's statute, therefore, does not extinguish fraudulent transfer suits by reference to related, but nonfraudulent, transfers. Instead, like any sensible statute of repose, the provision only bars causes of action for fraudulent transfers that have accrued.

LaRosa, 482 F. App'x at 759 (quoting W. Va. Code Ann. § 40-1A-9). Because there was no suggestion in the record that there was any fraudulent intent or purpose in creating the line of credit, the dissent found that the actionable fraudulent transfer occurred in 2003 when the $700,000.00 drawdown took place. Id. Therefore, the creditors properly brought their claim within the four-year statute of limitations. Id.

Sheehan argues that LaRosa is easily distinguishable because the sale of AGS to Daniel in 2006 was "of dubious legality" because an "osteopath cannot transfer a medical practice to a non-osteopath under West Virginia law." Appellant's Br. 20. However, the district court never deemed the sale illegal or voidable. Further, there is no indication that the district court's application of the holding in LaRosa would be altered if the transfer was "illegal." All fraudulent transfers are "illegal"; thus, just because a transfer is made pursuant to an illegal contract does not change the statute of limitations analysis under the WVUFTA.

On March 31, 2006, Daniel and Saoud executed a document in which Daniel agreed to purchase AGS from Saoud for

20

$1,000,000.00.  J.A. 62.  Under the purchase agreements, the name, corporate standing, disposable medical supplies, and goodwill were included; however, the cash in the account, accounts receivable, equipment, and software were all excluded from the sale.  Id.  Further, Daniel was not liable under the agreement for "any liabilities that have been incurred by [Saoud] while he has been President of [AGS] or any liabilities that [AGS] currently has."  Id.  A second document, also signed by Saoud and Daniel on March 31, 2006, recognizes Daniel's purchase of AGS and states:  "Daniel is also not responsible personally for payback of the purchase price."  J.A. 63.

Under the plain language of section 40A-1A-6, the statute of limitations began to run in 2006.  As stated above, "[a] transfer is not made until the debtor has acquired rights in the asset transferred and an obligation is incurred."  W. Va. Code § 40-1A-6(d).  If the obligation is evidenced by a writing, the obligation becomes effective when the writing is delivered to or for the benefit of the obligee.  Id.  Saoud and Daniel signed documents transferring ownership in AGS to Daniel on March 31, 2006.  Under the March 31, 2006 sale documents, Daniel acquired rights in AGS and AGS incurred an obligation to pay Saoud the purchase price.  Sheehan does not dispute that the 2008 money transfer was made pursuant to the March 31, 2006 sale documents.

21

Because the obligation was evidenced by a writing, AGS's obligation became effective that day. Therefore, the alleged fraudulent "transfer"—as defined under the WVUFTA—took place on March 31, 2006. The statute of limitations expired on March 31, 2010, and the statute of repose expired on September 9, 2011, one month before Sheehan filed suit.

Notably, if applied to this case, the dissent's reasoning in LaRosa would also not alter the outcome, because Sheehan alleged that Saoud's 2006 sale of AGS to Daniel was fraudulent in and of itself. See Appellant's Br. 18. Therefore, unlike the underlying facts in LaRosa, Sheehan alleges that both the 2008 money transfer and the 2006 sale were fraudulent. Thus, the statute of limitations expired under the analysis of both the majority and dissent in LaRosa. For these reasons, we affirm the district court's ruling that Sheehan's WVUFTA claims are barred by the statute of repose.

C.

Lastly, Sheehan argues that the district court erred in holding that a cause of action for civil conspiracy could not be based on a violation of the WVUFTA. Appellant's Br. 21. Sheehan argues that the statute makes actionable a transfer made with "actual intent to hinder delay or defraud creditors" and is therefore a tort. Id. (citing W. Va. Code § 40-1A-4(a)(1)).

22

First and foremost, because the district court had a valid independent basis to support its ruling beyond holding that a WVUFTA violation cannot support a civil conspiracy claim, it is not necessary for the Court to decide this issue. In addition to finding that the WVUFTA did not provide a basis for a civil conspiracy claim, the district court alternatively held that Sheehan failed to adequately plead fraud. In its order on Scott's and Sheehan's motions for summary judgment, the district court stated the following when it addressed Sheehan's civil conspiracy claim under Count IV:

> Following a careful weighing of the matter, the Court agrees with Scott that a violation of the WVUFTA sounds in contract; thus, Sheehan, by having relief on the WVUFTA, has failed to plead a tort. Moreover, even if he had pleaded a tort by alleging a violation of the WVUFTA, Sheehan's factual allegations are <u>wholly inadequate regarding how and when the defendants engaged in civil conspiracy</u>.

J.A. 133–34 (emphasis added).[6] Addressing the same claim against Saoud, the court stated as follows:

> [A] violation of the WVUFTA does not sound in tort as is required to establish a civil conspiracy claim under West Virginia law. Therefore, Sheehan has failed to plead adequately the claim of civil

---

[6] Scott is not a party to this appeal. Although this quote comes from the portion of the court's order addressing Scott's motion for summary judgment, the court subsequently recognized its prior discussion of the civil conspiracy claim and applied the reasoning to its disposition of Sheehan's motion for summary judgment on Count IV. J.A. 158–59.

conspiracy alleged in Count IV of the amended complaint.

J.A. 158–59. Further, during the final pretrial conference on February 18, 2015, the court again addressed the civil conspiracy claim in Count IV, stating the following:

> Mr. Sheehan never pled a civil conspiracy and to the extent that you're arguing here today that he did, I think you need to go take a look at the amended complaint and if you think he pled a plain vanilla fraud tort civil conspiracy, you ought to look at your facts there because under Rule 9 I would have kicked it out had anybody moved. . . . Had it been pled, it is woefully inadequate. It's never been fixed. It's not a claim that could ever go to trial.

J.A. 273–74. Notably, in his brief, Sheehan states in a footnote: "The District Court also found a procedural default to be applicable. That default is an independent basis for decision [sic] and is not contested in this appeal." Appellant's Br. 21 (emphasis added). Sheehan does argue, on the other hand, that the district court's ruling with respect to the adequacy of the pleadings was an exercise in judicial activism because Saoud never moved to dismiss the complaint. However, the court is not required to ignore an obvious failure to allege facts setting forth a plausible claim for relief. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). In such a circumstance, the court is authorized to dismiss a claim sua sponte under Federal Rule of Civil Procedure 12(b)(6), as long as there is notice and an opportunity to be heard. See

24

_United Auto Workers v. Gaston Festivals, Inc._, 43 F.3d 902, 905–06 (4th Cir. 1995) (affirming the district court's sua sponte dismissal of plaintiff's claims); see also _Saifullah v. Johnson_, 1991 WL 240479 (4th Cir. Nov. 20, 1991) (unpublished) ("A court may, on its own initiative, dismiss a civil complaint for failing to state a claim."). Therefore, the district court's alternative holding that Sheehan failed to adequately plead his civil conspiracy claim, uncontested on appeal, was proper and provides an independent basis for affirming the district court's ruling.

Notwithstanding the foregoing, the Court will address the merits of Sheehan's arguments. Sheehan argues that a violation of the WVUFTA can support a civil conspiracy claim as sounding in tort because the first prong deems fraudulent a transfer or obligation incurred by a debtor "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." W. Va. Code Ann. § 40-1A-4(a)(1). West Virginia recognizes a cause of action for civil conspiracy. _Kessel v. Leavitt_, 511 S.E.2d 720, 753 (W. Va. 1998) ("The law of this State recognizes a cause of action sounding in civil conspiracy."). "[A] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." _Dixon v. Am. Indus._

25

Leasing Co., 253 S.E.2d 150, 152 (W. Va. 1979). "The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Id. Therefore, civil conspiracy is not a stand-alone cause of action, but is rather "a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Dunn v. Rockwell, 689 S.E.2d 255, 269 (W. Va. 2009) (citing Kessel, 511 S.E.2d at 754). As such, courts in West Virginia dismiss civil conspiracy claims when they are not supported by an underlying tort. See, e.g., Long v. M & M Transp., LLC, 44 F. Supp. 3d 636, 652 (N.D.W. Va. 2014) ("[B]ecause the Court granted summary judgment as to the deliberate intent and outrage claims, there is no underlying tort to support the civil conspiracy claim. Accordingly, this claim fails as a matter of law.").

The district court recognized that "case law in West Virginia is bereft of guidance as to whether [a conspiracy claim for violation of the WVUFTA] sounds in contract or tort." J.A. 132. However, the district court looked for guidance elsewhere and noted cases from other jurisdictions that have adopted the Uniform Fraudulent Transfer Act and whose courts have held that a violation of the act is not a tort. J.A. 132–33 (citing

26

F.D.I.C. v. S. Prawer & Co., 829 F. Supp. 453, 455 (D. Me. 1993) ("The Court is satisfied that violation of . . . Maine's Uniform Fraudulent Transfers Act . . . is not a tort.")). After carefully weighing the matter, the district court determined that a violation of the WVUFTA sounds in contract, and therefore does not support a civil conspiracy claim. J.A. 133.

The WVUFTA provides two separate prongs under which a transfer made by a debtor may be deemed fraudulent as to the creditor. The first prong provides that a transfer is fraudulent if the debtor made the transfer or incurred the obligation "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." W. Va. Code Ann. § 40-1A-4(a)(1). A transfer may also be deemed fraudulent under the second prong if the debtor made the transfer or incurred the obligation:

> Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor: (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) Intended to incur, or believed or reasonably should have believed that he (or she) would incur, debts beyond his (or her) ability to pay as they became due.

W. Va. Code Ann. § 40-1A-4(a)(2). Therefore, a plaintiff is only required to demonstrate actual intent to establish a fraudulent transfer under the first prong.

27

Although the Fourth Circuit has not addressed the issue, courts from varying jurisdictions have refused to recognize violations of the Uniform Fraudulent Transfer Act as torts. See, e.g., United States v. Neidorf, 522 F.2d 916, 917–18 (9th Cir. 1975); Desmond v. Moffie, 375 F.2d 742, 743 (1st Cir. 1967) (finding fraudulent conveyance claim under Massachusetts Uniform Fraudulent Conveyance Act to be a contract rather than tort action for purposes of applying appropriate statute of limitations); S. Prawer, 829 F. Supp. at 456 (finding fraudulent conveyance claim not to be a tort claim for purposes of the Federal Tort Claims Act); Branch v. Fed. Deposit Ins. Corp., 825 F.Supp. 384 (D. Mass. 1993) (finding fraudulent conveyance claim not to be a tort claim for purposes of the Federal Tort Claims Act); Fed. Deposit Ins. Corp. v. Martinez Almodovar, 671 F.Supp. 851, 871 (D.P.R. 1987) (finding fraudulent conveyance claim not to be a tort for purposes of choosing appropriate statute of limitations); In re Fedders N. Am., Inc., 405 B.R. 527, 549 (Bankr. D. Del. 2009) ("Likewise, the authorities are also clear that there is no such thing as liability for . . . conspiracy to commit a fraudulent transfer as a matter of federal law under the Code."); Freeman v. First Union Nat'l Bank, 865 So.2d 1272, 1277 (Fla. 2004) ("We simply can see no language in FUFTA that suggests an intent to create an independent tort for damages.").

28

However, a handful of courts from other jurisdictions have recognized violations of the Uniform Fraudulent Transfer Act as torts. See, e.g., Alliant Tax Credit Fund 31-A, Ltd. v. Murphy, 2011 WL 3156339, at *8 (N.D. Ga. July 26, 2011) ("Although Plaintiffs' claim for civil conspiracy does not furnish an independent cause of action on which to hold Defendants liable, it can be used to establish some of Defendants' liability for fraudulent transfers under the UFTA."); Valvanis v. Milgroom, 529 F. Supp. 2d 1190, 1203 (D. Haw. 2007) ("[T]he underlying actionable tort for the conspiracy claim is the fraudulent transfer of the Hawaii Property [under the HUFTA]."); Gutierrez v. Givens, 1 F. Supp. 2d 1077, 1087 (S.D. Cal. 1998) ("The Court finds that a triable issue of fact exists as to whether Colonial may be found liable for a civil conspiracy to violate the UFTA."); In re Advanced Telecomm. Network, Inc., 2013 WL 414654, at *3 (Bankr. M.D. Fla. Feb. 4, 2013) ("The Amended Complaint properly pleads civil conspiracy against the Defendants to the extent it alleges they knowingly agreed and aided the Allens in violating the UFTA's constructive fraudulent transfer provisions."); In re Penn Packing Co., 42 B.R. 502, 505 (Bankr. E.D. Pa. 1984) (Pennsylvania's fraudulent conveyance act claim a tort for purposes of choosing Pennsylvania statute of limitations); Banco Popular N. Am. v. Gandi, 876 A.2d 253, 263

29

(N.J. 2005) (recognizing a claim for civil conspiracy for aiding and abetting a fraudulent transfer under the UFTA); Double Oak Const., LLC v. Cornerstone Dev. Int'l, LLC, 97 P.3d 140, 146 (Colo. App. 2003) ("[W]e conclude that a transfer in violation of CUFTA is a legal wrong which will support a conspiracy claim."); McElhanon v. Hing, 728 P.2d 256, 263 (Ariz. Ct. App. 1985) aff'd in part, vacated in part, 728 P.2d 273 (Ariz. 1986) ("[U]pon passage of the Uniform Fraudulent Conveyances Act, a conveyance to defraud a general creditor became a legal wrong, properly the subject of a suit for civil conspiracy.").

Further, while very few have addressed the issue, some circuit courts have recognized a cause of action for civil conspiracy based on a violation of the Uniform Fraudulent Transfer Act. See, e.g., CNH Capital Am. LLC v. Hunt Tractor, Inc., 568 F. App'x 461, 473 (6th Cir. 2014), as amended (July 2, 2014) (recognizing that Kentucky law allows recovery from a transferee or transferor for civil conspiracy to commit a fraudulent conveyance, but denying relief because defendant was neither the transferee nor the transferor); Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1090 (11th Cir. 2004) (recognizing a cause of action for civil conspiracy based on the UFTA under Georgia law against non-transferee defendants); Forum Ins. Co. v. Comparet, 62 F. App'x 151, 153 (9th Cir. 2003) ("California

30

allows for a cause of action for conspiracy to commit fraudulent transfers, and allows a plaintiff to recover legal damages on such a cause of action."). However, in these cases, the circuit courts applied the law as already decided by state courts recognizing such civil conspiracy claims.

As outlined above, there are two prongs of the WVUFTA, only one of which requires proof of fraudulent intent. Conceivably, a plaintiff could adequately plead a violation of the WVUFTA under the first prong with actual intent to hinder, delay, or defraud, sufficient to support a civil conspiracy claim. However, a violation of the second prong would not be sufficient to support a civil conspiracy claim. Therefore, the Court cannot hold, as a matter of law, that a violation of the WVUFTA can support a claim for civil conspiracy in all circumstances. Further, the Court is reticent to expand the bounds of West Virginia policy by recognizing a civil conspiracy claim for violation of the WVUFTA for the first time. "Absent a strong countervailing federal interest, the federal court . . . should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (quoting Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir. 1992)).

31

Therefore, the Court declines to make such a policy determination to recognize that a violation of the WVUFTA sounds in tort.

Regardless, even if the court were to recognize that a violation of the WVUFTA sounds in tort, Sheehan's civil conspiracy claim would be barred by the statute of repose as fully set forth above. In West Virginia, "the statute of limitation for a civil conspiracy claim is determined by the nature of the underlying conduct on which the claim of conspiracy is based." Dunn v. Rockwell, 689 S.E.2d 255, 269 (W. Va. 2009). Therefore, because the statute of limitations for Sheehan's WVUFTA claim expired, it necessarily must follow that the statute of limitations for Sheehan's civil conspiracy claim has also expired. Thus, the Court affirms the district court's dismissal of Sheehan's claims for violation of the WVUFTA.

IV.

For the reasons set forth above, we conclude that Sheehan's WVUFTA and civil conspiracy claims are barred by the applicable statute of limitations. We therefore affirm the district court's dismissal of Sheehan's claims.

AFFIRMED